## Vermont Electric Power Co., Inc. v. John S. Anderson et al.

[147 A2d 875]

November Term, 1958

Present: **Cleary, C. J., Adams, Hulburd, Holden and Shangraw, JJ.**

Opinion Filed January 6, 1959

*Bloomer & Bloomer* for John S. Anderson.

*Fayette & Deschenes* for Mary L. Anderson.

*John D. Carbine* and *Edwin W. Lawrence* for the appellee.

**Holden, J.** This is an appeal from an order of the Public Service Commission in condemnation proceedings. The plaintiff, Vermont Electric Power Company, Inc., seeks to acquire a right of way across lands of the defendants John S. and Mary L. Anderson for the purpose of constructing an electric power line to transmit electric energy generated at the St. Lawrence Power Project at Massena, New York. On May 15, 1958, the Public Service Commission issued its order authorizing the plaintiff to take the right of way by eminent domain. The defendants, husband and wife, own the property sought to be condemned. They bring separate appeals.

### Appeal of John S. Anderson

The assignment of error made by the defendant, John S. Anderson, attacks the order on three procedural points. First, he complains that the stenographic transcript of the proceedings before the Commission was not furnished him pursuant to the provisions of paragraph 5, County Court Rule 31. Paragraph 5 details the procedure to be followed in ordering and procuring the transcript by the excepting party in causes heard in the County Courts. It provides that the reporter shall file the completed transcript with the County Clerk who shall deliver the transcript to the party ordering the same upon the payment of the balance due the reporter. In the instant

case it appears that the transcript was filed by the reporter with the clerk of the Public Service Commission. The clerk transmitted the stenographic record to the clerk of the general term of the Supreme Court.

The question whether County Court Rule 31 has application to appeals from the Public Service Commission is not before us. It does not appear that this defendant, as the excepting party ever called upon the Commission to rule on the point. Nor is the question raised by the bill of exceptions of this defendant. Although the appellant was given leave to amend his exceptions, no amendment was offered to cover the error, if any there was. Appellate review does not extend to questions that were not raised in the proceedings below and not brought to the appellate court by a bill of exceptions. *Collins* v. *Fogg*, 109 Vt 433, 436, 199 A 251; *Abel's, Inc.* v. *Newton*, 116 Vt 272, 275, 74 A2d 481.

Beyond that, however, it appears that the original transcript of these proceedings was filed with the clerk of this Court on June 4, 1958. It has been readily available for delivery to either defendant if required in the preparation of this appeal. This fact was specifically called to the attention of the parties by interlocutory order of this Court, entered more than thirty days in advance of the date specially appointed for the filing of briefs by the appealing parties. No intrusion upon any right of this defendant is established by this claim of error.

The bill of exceptions of the defendant John Anderson, as originally drafted and prepared, contained a provision to stay the order of condemnation and its execution. In signing the bill of exceptions passing the cause to the Supreme Court, the chairman of the Public Service Commission struck this provision. This appellant contends that this action by the Commission chairman was "contrary to the law and in violation of equal protection of the law and due process."

V. S. 47, §9345 of Chapter 397 provides: The judgment and findings of the commission shall be final, except that a party who feels himself aggrieved thereby may appeal to the Supreme Court pursuant to the provisions of section 9296. Such appeal shall suspend execution of the judgment of such

commission but the Supreme Court, or a single justice in vacation, may vacate the suspension as justice and equity require.

The legislative origin of section 9345 is found in No. 163 of the Acts of 1915. Section 7 of this enactment conferred the power of eminent domain on public service corporations other than railroads. In granting this power, it is expressly provided that an appeal from the judgment of the Public Service Commission in condemnation proceedings "shall suspend execution of the judgment, order or decree of said commission, but the supreme court, or when not in session, a justice thereof may vacate the suspension as justice and equity require." As originally enacted, this section had direct application to condemnation proceedings. Although its sequence has been changed in subsequent statutory revisions, its substance and application remain unchanged. See *In re Blake*, 107 Vt 18, 26, 175 A 252; *Cuthbertson* v. *Ritchie*, 99 Vt 50, 54, 130 A 756.

The appeal in these proceedings vacated the order of condemnation by operation of section 9345. And any act of the Commission chairman could not override the application of the statute. The provision for suspension of the order in appellant's bill of exceptions was surplusage. It concerned a matter in which the chairman had no authority. The power to suspend the operations of the order in condemnation causes is reserved to the Supreme Court or a single justice in the event the Court is not in session.

On June 3, 1958, a date when the Supreme Court was not in session, the Chief Justice ordered that the pending appeals do not suspend the execution of the judgment of the Public Service Commission and provided that plaintiff might take immediate possession of the condemned property. It was further provided, however, that the order should not become effective until the plaintiff filed an adequate bond, conditioned that the plaintiff "pay all damages of every kind and nature whatsoever arising out of its possession and use of the premises if it is ultimately determined that the Petitioner is not entitled thereto." A corporate surety bond in the penal sum of $25,000, approved by the Chief Justice, was furnished to protect the

defendants from any damage that might occur from the operation of the Commission order pending its review by this Court.

In so doing, jurisdiction was expressly reserved to modifiy, amend, annul or revoke this order after hearing, on application of any party in interest. No application for modification has been presented.

The defendant has failed to indicate, in any particular, wherein he has been denied equal protection or due process of the law in the appellate procedure that has been followed in this aspect of his appeal. Safeguards beyond the requirement of the statute have been imposed to protect his property rights in the event his appeal should be sustained. His claim of shortage of constitutional guaranties is without merit.

The final point presented by the appeal of this defendant relates to the plaintiff's petition. This exception stands on paragraph 14 of the defendants' motion to dismiss the petition wherein the defendant stated: "There is nothing more obviously essential to the petitioner's case than a sufficient description of that which it proposes to acquire. It cannot put on the landowner the burden of determining what or how much it requires to accomplish its purpose. The sought-for rights should be specified with certainty."

The petition specifies the right of way sought to be condemned by exact courses and distances. It refers to specific monuments on the ground. The boundaries are fixed and certain.

The petition seeks the acquisition of this particular right of way "together also with the right to enter upon and cross other property owned by the petitionees for the purpose of gaining access to said one hundred fifty foot strip and right of way in order to thereon exercise any of the rights hereby conveyed, provided that said right must be exercised in a careful manner and any damage to the property of the Petitionees caused by the Petitioner shall be borne by the Petitioner. Reserving to the petitionees, their heirs, executors, administrators and assigns the right to cross and recross said strip at such places as may be necessary in using the land adjacent to said strip provided such crossing and recrossing shall not interfere with the rights herein granted."

■ The interest in land sought to be taken in condemnation proceedings must be described with certainty and accuracy. This is the general requirement of the law. *Otter Tail Power Co.* v. *Von Bank,* 72 ND 497, 8 NW2d 599, 145 ALR 1343, 1347; *Winchester* v. *Ring,* 312 Ill 544, 144 NE 333, 36 ALR 520, 526. See also 18 Am. Jur., Eminent Domain, §325, pp. 969-970; 29 CJS, Eminent Domain, §259, pp. 1228-1231.

■ The requirement of the law is fulfilled if the description is such that the landowner is not misled and its defect may be cured upon demand. *Illyes* v. *White River Light & Power Co.,* 175 Ind 118, 93 NE 670, 671-672; *State ex rel Chelan Elec. Co.* v. *Superior Court,* 142 Wash 270, 253 P 115, 58 ALR 779, 787. Here the defendant makes no claim he was misled. And he did not request that the description of the property be amplifed or more particularly stated.

■ That the principal right of way is described with sufficient certainty is manifest from a reading of the petition. The secondary right of access, although set forth in less precise terms, purports to acquire nothing more than the law implies from the primary easement. Where the right of access is not expressly defined or limited, the grantees are entitled to a convenient and reasonable approach, with proper regard to the interest and convenience of the dominant and servient owners. *Lafleur* v. *Zelenko,* 101 Vt 64, 70, 141 A 603; *Stevens* v. *MacRae,* 97 Vt 76, 81, 122 A 892; *Kinney* v. *Hooker,* 65 Vt 333, 337, 26 A 690.

■ To draw a precise line of demarcation between the reciprocal rights and obligations that obtain between the landowner and the condemning grantee, to cover every eventuality that might arise in the future use of the property, would be impossible. The creation of an easement or right of way for an electric power line carries with it a reasonable right of access to enable the utility to discharge its legal obligation to render adequate and dependable service. It has the right to enter upon the land to construct and service the facility. In the first instance the route of entry may be designated by the defendants, as owners of the servient estate, since the precise way of access is not defined. *Lafleur* v. *Zelenko, supra,* 101

Vt at 70, 141 A at 606. But the designation by the landowner must be consistent with the purpose for which the condemnation was ordered and without interfering with the full use and free exercise of the principal easement. See *Carolina Power & Light Co.* v. *Bowman*, 229 NC 682, 51 SE2d 191, 6 ALR2d 194, 199; and annotation, 6 ALR2d 208, 213.

Here the landowners have pointed out no particular defect in the description of the property sought to be condemned. No request was made to limit the right of access to any specific route or course. In this situation the right of access is supplied by implication and operation of law. This result offers nothing repugnant to the due process clause and involves no denial of equal protection. The appeal of the defendant John S. Anderson is not sustained.

### Appeal of Mary L. Anderson

The appeal of the defendant Mary L. Anderson is founded on the concept that the participation of the Commission in these proceedings is partial and biased as a matter of law. The charge of partiality is founded on the responsibility delegated to the Commission as an agency of the State of Vermont in the procurement and distribution of electric energy developed at the St. Lawrence Power Project. The controversy develops from two Acts of the General Assembly—No. 193 of the Acts of 1951 and No. 97 of the Acts of 1955.

The 1951 enactment constituted the Public Service Commission the responsible planning agency of the state to obtain adequate electric power for all communities and localities in the state and to provide for an integrated transmission system. Section 3 of this act, as amended by No. 97 of 1955, provides: "The public service commission is hereby designated as the agent of the state of Vermont with full powers to act for and represent the state in any negotiations, arrangements or proceedings for the procurement of electric energy from any source outside the state of Vermont with right, with the approval of the governor, to contract for the purchase of such power and the resale on a nonprofit basis of such power to the electric distribution companies, cooperative, municipal and privately owned, without preference or discrimination, for

distribution within the state. The public service commission, with the approval of the governor, is authorized and empowered to enter into contracts for the transmission of such energy from the place of purchase to a point or points within the State of Vermont. The public service commission, with the approval of the governor, is authorized and empowered to expend $15,000, or so much thereof as is judged necessary, to employ additional engineering and legal personnel to assist it in the procurement of such energy."

In response to this legislation, the Commission sought and obtained an allocation of 100,000 kilowatts of electricity for the State of Vermont from the hydroelectric generating plant of the Power Authority of the State of New York on the St. Lawrence River. The sale and transmission of this electric energy is governed by the St. Lawrence Contract of January 25, 1956. By Article IX of the contract, the Public Service Commission, as the purchasing contractor, "agrees that in reselling power purchased from the Authority it will do so pursuant to the appropriate laws of the State of Vermont, that it will do so on a nonprofit basis and that it will require transmitting or distributing companies or public agencies to whom it sells the power for resale also to sell such power without profit other than reasonable compensation for use of facilities and for services furnished in the transmission and/or distribution of such power, and that it will follow the principles enunciated in the Power Authority Act, particularly that which requires that power be made available at the lowest possible cost to rural and domestic consumers."

The contract was signed by the chairman and secretary of the New York Power Authority in behalf of the State of New York. It is signed by the individual members of the Public Service Commission and bears the signed approval of the Governor on the part of the State of Vermont.

The claim that the Public Service Commission is not an impartial tribunal to adjudicate the issue of adequate compensation arises from that provision of the St. Lawrence Contract wherein the Public Service Commission agrees to make its purchase of St. Lawrence power available to rural and domestic users at the lowest possible cost. The defendant

contends this contractual obligation renders the Commission a partial tribunal, with a disqualifying interest in the outcome of these proceedings. The inference is made that this interest leads to condemnation of private property rights in a manner repugnant to state and federal guaranties. No specific act, statement or conduct by the Commission or any of its members is specified to support the claim of partiality. The charge of bias and prejudice is constructed entirely from the contracts made pursuant to the statutory duties imposed upon the agency by legislative enactment.

The Commission has no personal pecuniary interest in the outcome of these proceedings. The primary beneficiaries of the public trust established by the legislative enactment and by the St. Lawrence Contract are the people of Vermont and particularly the rural and domestic consumers.

The general interest which the Commission shares with other citizens of the state in the achievement of the purposes and objectives of the statutory enactment and the St. Lawrence Contract does not render it judicially unfit to decide the issues in this proceeding. To work a judicial disqualification, the interest must be proprietary or such that affects the personal rights of the judge as an individual. *State* v. *Sutton*, 74 Vt 12, 14, 52 A 116. In the absence of an express statutory prohibition, a remote interest does not disqualify. *State* v. *Wright*, 81 Vt 281, 284, 69 A 761; *Chase* v. *Rutland*, 47 Vt 393, 400; *State* v. *Batchelder*, 6 Vt 479, 488.

Akin to the claim that the Commission has an interest in the outcome of these proceedings is the charge of prejudice on the issue of necessity.

On June 13, 1957, the Commission, with the approval of the governor, entered into a contract with the plaintiff, referred to as the Power Transmission Contract. This agreement provides for the transmission and delivery of the St. Lawrence Power from the Vermont-New York boundary to the various purchasers to whom the power is allocated within the State of Vermont. It specifies "The general transmission plan recommended by Barker & Wheeler as consulting engineers for the State in their Report on a Transmission Plan for the

State of Vermont in connection with St. Lawrence River Power from the Power Authority of the State of New York dated January 22, 1957, shall control as to all such facilities, and alternatives, substitutions or additions shall be made only with the approval of the State."

It appears from the record in this case that the Barker & Wheeler plan, referred to in the transmission contract, recommended the St. Lawrence Power be received from the transmission facilities of the New York Power Authority at three points of entry nearby the New York-Vermont State boundary. The plan proposes transmission facilities from North Troy, New York to Bennington, Vermont; from the floor of Lake Champlain near Plattsburg, New York by submarine cable to Grand Isle, Vermont; and from Whitehall, New York to Rutland, Vermont. There has been concurring approval of the general plan by the Commission and the New York Power Authority.

It is upon the prior approval of the Barker & Wheeler plan for inter-connection of the transmission lines of the New York Power Authority with the Vermont transmission facilities that the defendant stakes her charges of prejudgment of the issue of necessity. No claim is asserted that the engineering recommendation included the details for the construction of the line or that such construction would reach or affect the property of the defendants. There is nothing in the appellant's brief to indicate that the Commission, by contract or otherwise, made any prejudgment on the issue of the necessity of taking a right of way through the defendants' property. It affirmatively appears in the record that the Commission had no prior knowledge that the lands of the defendants might be involved.

That St. Lawrence power is vital to the economy of the State and will constitute approximately two-thirds of its present electric power requirements is not disputed. The need to obtain and provide for the delivery of electric energy from outside the state was recognized and decided by the General Assembly. The "overall necessity has been recognized and established by legislative enactment and there remains only the question of whether the taking of the particular

land in question is reasonably necessary for the accomplishment of the ends envisioned by the legislature." *Latchis* v. *State Highway Board*, 120 Vt 120, 124, 134 A2d 191, 194.

■ The determination of the need to provide an interconnection with the New York Power Authority facilities at Whitehall and the Vermont electric transmission system at Rutland does not adjudge that the lands of the defendants are necessary for the project. The details of the Barker & Wheeler plan have not been brought to our attention. Only its general outline and the fact of its approval are set forth in the briefs. From this, we cannot infer that the Public Service Commission wrongfully decided, in advance of hearing, that public necessity required the appropriation of the right of way across the defendants' land.

The brief of the defendant Mary L. Anderson suggests there is a question whether the plaintiff is a private corporation affected with a public interest, hence the Public Service Commission was without jurisdiction. In its findings and report, the Commission determined that the plaintiff was organized and obtained a certificate of public good as required by Chapter 397 of the Vermont Statutes, Revision of 1947. It also appears that the plaintiff is a company engaged in the distribution of electricity to be used ultimately by the public and that the acquisition of the right of way through property of the defendants is necessary in order that the plaintiff may render adequate service to the public in the conduct of its business.

■ The defendant has not briefed nor argued any exception to the findings of the commission to question that the plaintiff is a public service corporation. Objections to findings of the commission that are not briefed nor argued are relinquished and waived. *In re Lake Seymour*, 117 Vt 367, 371-372, 91 A2d 813. Where findings stand unchallenged by valid exception, this Court is controlled by the facts found. *Conn Boston Co.* v. *Griswold*, 104 Vt 89, 99, 157 A 57. The proceedings appealed from will not be overthrown and held to be without warrant in law at the suggestion of the appellant on a point that is not briefed nor relied upon. *Platt* v. *Shields*, 96 Vt 257, 264, 119 A 520. The facts found establish the

plaintiff to be a public service corporation entitled to bring condemnation proceedings before the Public Service Commission pursuant to the provisions of V. S. 47, §§9331-9333.

The combination, by legislative mandate, of conflicting responsibilities in the Public Service Commission has troubled the courts since the creation of this administrative agency. *Sabre* v. *Rutland Railroad Co.*, (1913) 86 Vt 347, 362, et seq, 85 A 693. And the particular problem of impartiality and bias in condemnation proceedings confronted this Court in *George* v. *Consolidated Lighting Co.*, (1914) 87 Vt 411, 414-418, 89 A 635, 52 LRANS 850. The question of partiality and bias of administrative agencies persists;—it pervades the entire field of administrative law. *Federal Trade Commission* v. *Cement Institute*, 333 US 683, 68 S Ct 793, 92 L ed 1010, 1034; *United States* v. *Morgan*, 313 US 409, 61 S Ct 999, 85 L ed 1429, 1435; *Morgan* v. *United States*, 298 US 468, 56 S Ct 906, 80 L ed 1288, 1294. See also *In re Larsen*, 17 NJ Super 564, 86 A2d 430, 435, (concurring opinion, Brennan, J.).

In the *George* case, supra at 417-418, the Court concluded, "If an impartial tribunal is provided for the determination of the question of necessity and compensation and the provision with respect to notice and hearing and decision upon evidence and the judicial determination of questions of law are all provided for, the constitution is satisfied, and due process of law is accorded although the determination of facts is left to a body not strictly a court but to an administrative body exercising quasi-judicial functions. Such a body is our Public Service Commission."

■ By No. 193 of 1951 as amended, the General Assembly has imposed a new burden and responsibility upon the Commission,—the authority to contract in behalf of the State for the purchase, transmission and sale of electric energy for the benefit of the people of Vermont. Neither appellant asserts any question that this authority was lawfully delegated. The St. Lawrence Contract and the Power Transmission Contract, executed in response to the legislative directive, do not by their terms, or by their implication, render the Commission a predisposed or partial tribunal. Nor do they impair the integrity

of its judicial function or preclude a just decision on the issues of compensation and necessity presented in these proceedings.

■ The contracts delineate the rights and duties of the State of Vermont. And while the State, when it enters into a contractual obligation, within limits, puts aside some of its attributes as a sovereign, (see *Hartman* v. *Greenhow*, 102 US 672, 26 L ed 271) it does not and cannot bargain away inherent powers or constitutional guaranties. See *Sabre* v. *Rutland Railroad Co.*, *supra*, 86 Vt at 364, 85 A at 700.

Article 2nd of the Constitution of Vermont provides: "That private property ought to be subservient to public uses when necessity requires it, nevertheless whenever any person's property is taken for the use of the public the owner ought to receive an equivalent in money."

■ ■ The contractual undertaking of the State of Vermont to make St. Lawrence power available to the people of this state "at the lowest possible cost" is not in conflict with this provision. Nor can we attribute to this language any effort or intent to abrogate this constitutional protection or to wrongfully influence the Commission in the exercise of its quasi-judicial function. The presumption is to the contrary. *McFeeters* v. *Parker*, 113 Vt 139, 144, 30 A2d 300. The protection of the paramount law embodied within the state and federal constitutions is not precisely defined. The commands for "equal protection" and "due process" are not subject to application by precise formula or exact definition. *Kotch* v. *River Port Pilot Commissioners*, 330 US 552, 67 S Ct 910, 91 L ed 1093, 1096; *Gibbs* v. *Burke* 337 US 773, 69 S Ct 1247, 93 L ed 1686, 1691. The requirements of due process do not demand "an ideal system for the administration of justice— with provision against every hardship that may befall." *Owenby* v. *Morgan*, 256 US 94, 110-11, 41 S Ct 433, 438, 65 L ed 837.

The appellants do not refer us to any instance of unjust discrimination or arbitrary treatment of either defendant. They have been afforded full opportunity of hearing in defense of their property rights before a tribunal having jurisdiction of the cause. Final determination was reached after full and

extended hearings. The considerations that went into the final determination of the Commission have been reported. No exceptions to the findings and report are urged or briefed by the appellants. The record standing thus,—"We will not conjecture that the Commission concealed anything behind anything, particularly in the face of the presumption that it did its duty." *Petition of Central Vermont Public Service Corp.,* 116 Vt 206, 220, 71 A2d 576, 585.

The combination of functions, judicial and executive, reached by the cumulative statutory delegations of power to the Public Service Commission demands an exacting balance on the part of that tribunal in the discharge of its varied duties. Confining our concern to the specific points involved by this appeal, we hold the critical balance has not been unlawfully disturbed.

The defendants' exceptions are overruled.

*The order of the Public Service Commission is affirmed. Let the result be certified to the Public Service Commission.*