## In Re Petition of Citizens Utilities Company

[216 A.2d 923]

December Term, 1965

Present: **Holden, C. J., Shangraw, Barney and Keyser, JJ. and O'Brien, Supr. J.**

Opinion Filed February 1, 1966

*Lee E. Emerson and Shea, Gallup, Climenko & Gould* for Citizens.

*Ryan, Smith & Carbine* for Velco.

*Joseph E. Frank* for the Public Service Board.

**Keyser J.** This is an appeal by Citizens Utilities Company (Citizens) from an order of the Public Service Board (Board) dated October 22, 1963.

The petition of Citizens seeks an order directing Vermont Electric Power Company, Inc. (Velco) to supply subtransmission of Citizens own allotments of St. Lawrence power and Niagara Power Project.

Citizens contends it is entitled to be compensated for the transmission of its own allocations of such power from its interconnection with Velco at Highgate to its load centers or principal distribution areas.

. The first hearing was held on January 23, 1962. At the close of the hearing that day the hearing was scheduled for another date but was adjourned from time to time thereafter. On August 10, 1962, Citizens filed a motion to amend its petition requesting the approval of the Board of an annexed stipulation entered into by Citizens and Velco which provided for a settlement of the proceedings agreeable to them.

The Board set this motion to amend for hearing on October 2, 1962, notice of which was ordered to be given to all parties of record and others. The reporter engaged to take the hearing lacked the required proficiency which necessitated a recess of the hearing until the following day to permit the Board to obtain a second reporter. On April 12, 1963, it appeared to the Board that this reporter also was unable to furnish a transcript. The Board then gave notice it "would proceed without a transcript." It allowed time for the filing of requests for findings of fact which both Citizens and Velco filed.

The Board filed findings of fact on September 13, 1963, and its order on October 22, 1963. The order denied Citizens' motion to amend its petition, declined to accept the stipulation of Citizens and Velco, and dismissed Citizens original petition.

The only hearing held on the original petition was on January 23, 1962, of which a transcript was made. In the preface to its findings of fact the Board stated under the caption of "Summary of Proceedings" that Citizens was "fully heard." The transcript of that hearing on January 23, 1962 shows that counsel for Citizens then stated it had other evidence to present on the issues raised by its petition. Other parties, also, especially Velco, had not been heard in opposition to the

petition. The Board announced it would recess and reconvene on February 14, 1962 but no further hearing was held on that petition.

The Board, by legislative act, is authorized as agent of the State, with the approval of the Governor, to contract for the purchase of electric energy from any source outside of Vermont and to resell it on a non-profit basis to electric distribution utilities, without preference or discrimination, for distribution within the state. 30 V.S.A. §211. In January, 1956, the Board entered into a contract with the Power Authority of the State of New York, expiring in 1985, for the purchase of 100,000 kilowatts of firm power and energy generated at the St. Lawrence Project.

On June 13, 1957, the Board acting for the State entered into an agreement with Velco to deliver this state-owned power either directly, or through the facilities of others, from the state boundary to the various electric utility companies (state's allottees) in Vermont. Delivery was to be at such locations and at voltages specified by the State, there being twenty-eight allottees.

To fully perform its transmission contract of St. Lawrence power, Velco was required to make contracts with six other utilities for the subtransmission of the state power over their systems to reach allottees not directly connected with Velco's transmission system. Payment for the use of such facilities was made on a uniform method of computation. The terms and conditions of such contracts were approved by the Board.

One such contract was with Citizens entered into on September 23, 1958. The contract stipulated for the delivery of St. Lawrence power over Citizen's system to six allottees in the northeast part of the state.

In 1960, Citizens completed construction of a second circuit from Highgate to Newport. The circuit from Highgate to Richford was constructed as a 115 KV H-Frame line and has been operated at 48KV. The circuit from Richford to Newport was constructed at 48 KV as a second circuit installed on existing steel towers.

In 1961 the State entered into a second contract with the Power Authority of the State of New York for the purchase of an additional 50,000 kilowatts of firm power and energy generated at the Niagara Project. 30 V.S.A. §211a. Again, this power was resold by the State to its allottees on the same formula or basis as the St. Lawrence power.

The contracts which Velco had made with other utilities for the use of their facilities for the subtransmission of St. Lawrence power were amended to also cover Niagara power and were approved by the

Board. Citizens refused to sign the amendment to its contract with Velco. This precipitated a petition to the Board by Velco to require Citizens to transmit Niagara power for Velco to the six allottees interconnected with Citizens' system.

On December 29, 1961, the Board in that case ordered Citizens to accept at its Highgate interconnection, and transmit to those allottees, the allocated power from the Niagara project over its facilities on the same terms and conditions set forth in the 1958 transmission contract between Velco and Citizens relating to St. Lawrence power. On appeal to this court in that case the order of the Board has been affirmed by opinion filed concurrently herewith. *In re Petition of Vermont Electric Power Company, Inc.*, 125 Vt. ..... , 216 A.2d 918.

Velco transmits state power from near Plattsburg, New York, to Essex, thence to Highgate where delivery is made to Citizens by an interconnection between the two systems. Citizens has 15 major distribution areas serving around 25,000 people. Citizens is a single interconnected distribution system receiving its power from the Highgate interconnection with Velco and from its own generating point. Citizens' allotment is 5101 KW of St. Lawrence power and 2478 KW of Niagara power. At the outset Citizens purchased only 1 KW of St. Lawrence power with the right to recall the balance. When Niagara power became available it elected to purchase its entire allotment of 7579 KW.

Highgate is the only delivery point of state power to Citizens' system. Highgate is around 15 miles east of Alburg and 70 miles west of Island Pond, both distribution areas of Citizens. Newport, the largest area, is some 50 miles east of Highgate.

As a result of this distance from its interconnection with Velco at Highgate to these areas, Citizens, as conceded in the Board's brief, has a relatively high cost per kilowatt for transmission of its own allotment of state power. Herein lies Citizens claim by its original petition that it should be supplied subtransmission of state power from Highgate to its distribution areas. Citizens claims it will then be given equal treatment with the other utilities which it asserts do receive their allotments from Velco, at or near their principle distribution areas. This claim embraces not only subtransmission costs but also losses arising from the transmission of its own allotment, all of which Citizens says it must bear alone. Citizens contends this produces an unequal and unfair treatment of its customers.

Citizens urges error by the Board in its refusal to accept the Velco-Citizens stipulation. Briefly stated, the stipulation provided for the sale

of Velco of Citizens' 115 KV line between Highgate and Richford and the leasing to Velco of Citizens' so-called second circuits from Richford to Newport. Also, it would provide for two delivery points to Citizens, one at Highgate for its distribution area in the islands of Grand Isle County, the other at Newport. Upon approval of the stipulation by the Board the petition in this case was to be discontinued.

Citizens asserts the uncontradicted testimony established that the Highgate-Richford transmission line, to be purchased by Velco pursuant to its agreement with Citizens, would have been a necessary and useful adjunct to the Velco transmission system. Its brief also refers to an April, 1962, Ebasco study made by Velco, to various requests to find made by both itself and Velco and to an abuse of discretion by the Board in rejecting the stipulation.

The answering brief of the Board takes the position that the Board in its disapproval of the stipulation was acting in its contractual capacity and exercising powers of approval expressly conferred on it in the Power Transmission Contract with Velco. Citizens, on the contrary, maintains the Board was acting as a regulatory agency in the proceeding.

The general supervision of private electric utility companies is vested in the Public Service Board. 30 V.S.A. §203. This court held in the case of *Petition of New England Tel. & Tel. Co.*, 115 Vt. 494, 66 A.2d 135, at pages 510-511:

> "The function of a public service commission is that of control and not of management, and regulation should not obtrude itself into the place of management. *Bacon* v. *B. & M. R. R.*, 83 Vt. 421, 422, 76 A. 128. This rule is recognized in all of the cases."

To the same effect, *Latourneau* v. *Citizens Utility Co.*, 125 Vt. 38, 41, 209 A.2d 307.

30 V.S.A. §211 designates the Board to act for the estate to negotiate for and procure electric energy from sources outside of the state. The statute authorizes the Board "to contract for the purchase of such power and the resale on a nonprofit basis of such power to the electric distribution companies, cooperative, municipal and privately owned, without preference or discrimination, for distribution within the state." The statute further authorized the Board to enter into contracts for the transmission of such energy from the place of purchase to distribution points with the State of Vermont.

The Board cites certain provisions of the Power Transmission Contract which require the approval by the Board of Velco's contracts

with other utilities for use of their facilities in transmitting state power and also that of subsequent facilities of Velco. Its brief argues that "It should be clear from these terms of the PTC that the Public Service Board has contractual power to approve, or disapprove, the purchase or lease of additional transmission facilities by Velco." The claim is that "The Board's disapproval of the stipulation was manifestly within its contractual power."

■ The authority granted to the Board can only stem from, and is circumscribed by, the statute. 30 V.S.A. §211, 211a. It is not the terms of its transmission contract with Velco that controls as the Board argues. The statutes place the responsibility upon the Board to purchase power from outside the state, to resell it on a nonprofit basis, without preference or discrimination, and to enter into agreements for transmitting the power to its allottees, thus making it available to the people of Vermont. This is the extent of the contractual power conferred upon the Board by the statutes.

Chief Justice Holden in the opinion filed today in the case of *In re Petition of Vermont Electric Power Company, Inc.*, supra, 125 Vt. ......... ., ..........., said this: "In the first place, it is to be noted that the board is not a party to the subtransmission contract between Velco and Citizens for the distribution of St. Lawrence power. While this instrument bears the approval of the board in its supervisory capacity, the State has no financial interest in its terms. Its only concern in the contractual agreement is to see that the public interest is not compromised."

There is an unqualified distinction between the board acting in a contractual capacity, and its approval of a contract not of its own making. The Board is not a party to the contracts entered into by Velco with Citizens and other utilities. Thus, as to the Board it is not a bargaining or negotiating process, or a private arrangement, or contract, as between two parties. Rather, approval of such contracts by the Board is, and can be, only an exercise of its regulatory powers. *In re Petition of Vermont Electric Power Company, Inc.*, supra.

■ If the Board was in fact attempting to operate in a true contractual aspect, this in any event was error since consumers would be affected by the resulting rate. But as to rates the Board functions only as a regulatory body. It is self-evident that there must be no arbitrary preference or discrimination among the ultimate consumers of state-owned power.

Contrary to the position taken in its brief, the Board followed regulatory procedure by giving notices, holding hearings, permitting

requests to find, and making findings of fact. Moreover, the statutory requirement that the Board resell the State's power on a nonprofit basis without preference or discrimination is in direct derogation of the contractual theory of the Board.

All this strongly disputes and contradicts the contractual theory advanced by the Board. *Vermont Electric Power Co., Inc.* v. *Anderson*, 121 Vt. 72, 81 147 A.2d 875.

■ This position taken by the Board is wholly untenable and without merit. The agreement (stipulation) between Velco and Citizens involved the sale and lease of some of Citizens' assets. A determination by the Board on the matter presented demanded appropriate and essential findings based upon adequate evidence. The action of the Board on Citizens' original petition and the amendment was limited to its regulatory function. The matters therein for determination did not in any sense involve the contractual power conferred on the Board by statute.

It was error for the Board to disapprove the Velco-Citizens stipulated agreement and dismiss Citizens original petition on the ground that it was "valid contractual conduct" on the part of the Board. Furthermore, by the dismissal of the original petition simultaneously with its refusal to accept the stipulation the Board failed to accord Citizens a full hearing on its original petition with all attributes of due process. Thus the issues were never settled or resolved.

Citizens urges that the action of the Board should be reversed and the stipulation approved.

A reading of the findings discloses that the findings are not only silent but also are incomplete and inadequate on essential and critical issues requisite in a regulatory case. The record fails to lend support to many of the findings and the findings do not warrant the order.

It is to be noted that our opinion in *Latourneau* v. *Citizens Utility Co.,* supra, was handed down after the Board concluded the case at bar. Some aspects of this case are embodied in that decision and undoubtedly will have an effect on the findings to be made upon rehearing.

■ The Board after notice, heard Citizens' motion to amend its petition. Through no fault of Citizens there is no reporter's transcript of those proceedings obtainable. The lack of a transcript prevents a just review of certain questions raised by Citizens' appeal and compels a remand. See *Wemyss* v. *Viens*, 125 Vt. 81, 211 A.2d 238.

Our disposition of the case makes it unnecessary for us to consider

Citizens claim that the Board should have disqualified itself other than to comment that on the record presented the motion was properly denied. See *Leonard* v. *Willcox,* 101 Vt. 195, 215, 216, 142 Atl. 762. Moreover, it is now a moot question due to the change in the composition of the Board and its chairman. As such it is not for judicial review. *In re Pine's Estate,* 16 Ill. App. 2d 584, 149 N. E. 2d 787.

In the interest of fairness and justice, this case must be remanded for retrial.

*Order to the Public Service Board is reversed and cause remanded. Let the result be certified.*