### In Re Petition of Vermont Electric Power Company, Inc.

[216 A.2d 918]

December Term, 1965

Present: **Holden, C. J., Shangraw, Barney and Keyser, JJ. and O'Brien, Supr. J.**

Opinion Filed February 1, 1966

*Lee E. Emerson* and *Shea, Gallup, Climenko & Gould* for Citizens.
*Ryan, Smith & Carbine* for Velco.
*Joseph E. Frank* for the public service board.

**Holden, C. J.** The petitioner, Vermont Electric Power Company, (Velco) requested the petitionee, Citizens Utilities Company, (Citizens) to make available its electric transmission facilities to transmit electric energy generated at the Niagara Power Project allotted to six electric utility companies under provision of 30 V.S.A. §211 a. The request was refused, whereupon this petition was presented to the public service board to obtain a hearing and order by the regulatory agency directing Citizens to transmit the electric power on appropriate terms and conditions to be prescribed by the board. The petition was granted and the petitionee brings this appeal.

The background of this controversy is explained in the findings of the public service board. By virtue of 30 V.S.A. §211 the public service board is designated as the agent of the State of Vermont to procure electric energy generated outside the state. The statute authorizes the board "to contract for the purchase of such power and the resale on a nonprofit basis of such power to the electric distribution companies, cooperative, municipal and privately owned, without preference or discrimination, for distribution within the state." The Act further empowered the public service board to enter contracts for transmission of the power from the place of purchase to distribution points within the State of Vermont. 1951, No. 193 §3; Amended 1955, No. 97.

Responding to this legislative direction, the public service commission (renamed the public service board, 1959, Adjourned Session, No. 329 §39(a) acquired by contract 100,000 kilowatts of power generated at the St. Lawrence Power Project from the Power Authority of the State of New York. This contract is still in force and effect and, by its terms, will continue until July 1st, 1985.

To accomplish transmission and distribution of this electric energy the public service board entered into a contract, in behalf of the State of Vermont, with the petitioner, Velco. By this undertaking, Velco engaged to accept delivery and distribute St. Lawrence Power to the allottees at locations specified by the state. Velco's transmission system was directly connected to only three allottees, the Central Vermont Public Service Corporation, Green Mountain Power Corporation and Citizens. To reach the other allottees throughout Vermont it was necessary for Velco to enter subtransmission contracts. Delivery of St. Lawrence power to six allottees connected to Citizen's system is made by contract between Velco and Citizens. Barton Village, Inc., Enosburg Falls, Inc., Franklin Electric Light Co., Inc., International Electric Co., Lake Electric Corp. and the Village of Orleans, Inc., receive St. Lawrence power under this engagement.

These contracts were approved by the public service board and are now in effect. All provide for a single method of computing compensation to be paid the sub-transmitting companies for the use of their connecting facilities in the delivery of St. Lawrence power to the allottees.

On January 1, 1962, the State of Vermont acquired 50,000 kilowatts generated at the Niagara Power Project. The public service board was designated as the agent for the State to procure, resell and distribute the electric energy generated by the New York Power Authority at Niagara. 30 V.S.A. §211a. Each of the allottees served by Citizens in the St. Lawrence project elected to take similar allotments of Niagara power. Velco negotiated amendments to the existing sub-transmission contracts to accommodate Niagara allotments with all of the sub-transmission agencies except Citizens. Citizens declined to accept the proposed amendment to its existing contract. In December 1961 these proceedings were instituted requesting a hearing by the public service board and an order directing Citizens to transmit Niagara power to the six allottees served by the Citizen's system on such terms and conditions as the board prescribed.

After hearing the cause on December 19, 1961 the board reported the facts. The order that followed directed Citizens to transmit Niagara power to the allottees upon the same terms and conditions prevailing in the sub-transmission of St. Lawrence power.

This appeal challenges that decision on two main points. The first of these is based on the charge that terms imposed result in discriminatory treatment against Citizens to the preference of other allottees of St. Lawrence and Niagara power contrary to the statutory direction of 30 V.S.A. §211 quoted above.

This section designates the public service board as the agent of the State to contract for the purchase of electric energy generated outside the State, and resale of such power to the electric distribution companies within the State, whether publicly or privately owned, without preference or discrimination. The petition before us has nothing to do with purchase or resale of Niagara power. It is concerned exclusively with the transmission of electric energy after purchase and resale to Vermont operating utilities.

The board reported that the power generated at Niagara is the most economic source of electric energy available to electric utility companies in Vermont. To secure this benefit to all the electric users in the state the statute requires that the resale of this public commodity be accomplished without preference or discrimination,

Since 1949 the public service board has had the authority to order the interchange of electric transmission facilities at reasonable service charges regardless of the consent of the owner of the transmitting agency. 1949 No. 224. With the development of the Niagara Project the 1949 enactment was amended to meet the very contingency which developed when Citizens refused to enter a sub-transmission contract to deliver Niagara power to the six allottees entitled to its benefit under the law.

As amended 30 V.S.A. §212 provided: "The public service board, in the interest of public necessity, is hereby empowered to order in writing a company engaged in the manufacture, transmission, distribution or sale of electricity directly to the public or to be used ultimately by the public for lighting, heating, or power, to transport electric energy over its transmission or distribution facilities at a reasonable service charge and in such manner as the board shall direct when such transmission will alleviate an electric power shortage within this state. Whenever the public service board, upon application of any electric company, municipal, cooperative, or privately owned, engaged in the manufacture, transmission, distribution or sale of electric energy, and after due notice to all interested parties, makes findings based upon adequate evidence that such action is necessary or appropriate in the public interest and is not detrimental to the interest of investors or consumers, it may by order direct such electric company to establish physical connection of its transmission or distribution facilities with the facilities of one or more other such electric company to sell energy to, to exchange energy with, to transmit or distribute energy for any other such electric company or companies, provided that the board shall have no authority to compel any such electric company to sell, exchange, transmit or distribute energy when to do so would impair its ability to render adequate service to its customers. The board may prescribe the terms and conditions of the arrangement to be made between the electric companies affected by any such order including the compensation or reimbursement reasonably due to any of them, and in the case of a new physical connection the apportionment of costs between or among them provided that a company making application for a connection which will inure to its sole benefit shall assume the entire cost of such connection." Amended 1959, No. 329 (Adj. Sess.), §39 eff. March 1, 1961; 1961, No. 180 §1; 30 V.S.A. §212.

The appellant, Citizens, does not question that the delivery of Niagara power to the six allottees is in the public interest. Nor does it question that the use of its transmission facilities is the most economically feasible means for transmitting the allotments. And in sub-

stance, it concedes that all of the sub-transmission contracts provide for a single method for computing payments required for the use of the sub-transmission facilities of all connecting agencies.

However, at the hearing it offered evidence to prove that the very uniformity, which prevails in all of the sub-transmission contracts, works a discrimination against Citizens and results in preferential treatment to the other state allottees. The board rejected the evidence and rightly so.

 The question confronting the board was whether the terms of the existing sub-transmission contract, when applied to Niagara power, would be detrimental to the interests of the investors and consumers in the Citizens system. The evidence offered by Citizens was not addressed to this issue. Citizens sought to establish that the other major utilities engaged in sub-transmission contracts received their particular allocations of St. Lawrence and Niagara power at or near their principal distribution areas. Citizens, on the other hand, would receive its allotment of public power at a connecting point remote from its major distribution area at Newport. In consequence it would be required to use its own facilities in order to transmit its allotment a substantial distance to the Newport area. It claimed this circumstance entitled it to additional compensation, — not for serving the other allottees named in the petition, but for supplying its own power requirements.

This very question is the subject of an independent proceeding initiated by Citizens on December 8, 1961, heard on appeal at the present term. *In re Petition of Citizens Utilities Company*, 125 Vt. ........, 216 A.2d 923. Opinion filed this date. At the hearing, counsel for Citizens requested the board to take judicial notice of that petition. It was pointed out that no action had been taken on the petition and "that it embodies the substance of what we have tried to put in evidence under the allegation of what is reasonable and what is unreasonable so far as these contracts are concerned."

 Citizens claim for compensation for transmitting its own allotment was entirely foreign to its right to compensation for furnishing interchange facilities for transmitting power alloted to others. The offer was correctly excluded.

Except for the adverse effect of being required to transmit its own allotment of Niagara power a great distance from its connecting point with Velco to Newport, Citizens make no claim that the terms imposed by its sub-transmission contract are different from the sub-transmission contracts of other connecting utilities. The finding of the

board that all of the sub-transmission contracts are substantially uniform in the method of computing payment for transmission of power to outside allottees is supported by the record.

Citizens challenge findings 31 and 32 which conclude the board's report of the facts:

"31. Sub-transmission by Citizens of Niagara Project Power to the six allottees herein under terms for such transmission comparable to the terms of the contracts agreed to by the other subtransmitters of Niagara Project Power will result in payment to Citizens of approximately $20,000 per year. The Board is unable to find that such sub-transmission would be detrimental to the investors or consumers of Citizens or detrimental to any other investors or consumers."

"32. It is necessary and appropriate in the public interest, and is not detrimental to the interest of investors or consumers, that Citizens Utilities Company transmit Niagara Project Power over its facilities for the six allottees named in this petition. Such transmission will not impair the ability of Citizens Utilities Company to render adequate service to its customers."

Pursuing the same line of attack, the appellant complains that unlike all other allottees, it is required to bear the entire cost of transporting its own allocation of out-of-state power over its own facilities for a distance of fifty-seven miles to its major distribution center. The effect imposes a higher rate to Citizens' customers for electric energy since it increases the utility's overall distribution costs.

Again, this effect is entirely beyond the scope of the issues presented by Velco's petition. It has nothing to do with the interchange of transmission facilities to establish physical connection between Velco and the six allottees outside the Citizens' system.

The subordinate findings made by the board are not disputed. They establish that the Citizens' system had sufficient reserve capacity to accommodate the transmission of both St. Lawrence and Niagara allotments without impairing its ability to render adequate service to its own users. The board further found that it is not economically feasible to transmit Niagara power to the six allottees served by Citizens without using the transmission facilities owned by Citizens. To accomplish deliveries by other means would require construction of an additional plant in duplication of existing lines. Construction of additional facilities would require several months at a cost in excess of a million dollars. This would entail an annual cost of $150,000.

The comparable annual cost of transmitting Niagara power over existing facilities owned by Citizens on the terms proposed was computed at $20,000, without detrimental effect to the Citizens' investors or consumers. The board further found that the use of Citizens' plant would increase its present operating revenue without involvement of additional investment or expense.

These considerations justify the ultimate determination expressed in Findings 31 and 32, and the order which followed. No error appears.

The second point in this appeal assigns prejudice to the public service board. The claim was first raised at the outset of the hearing by a motion addressed to the board to disqualify itself from hearing the petition. The motion was stated on the ground that the merger of contractual powers with administrative authority in this governmental agency worked a disqualification which should preclude the board from hearing and determining the merits of the petition.

In support of the motion, counsel referred to a letter written by the chairman of the public service board to the vice president of Citizens' Company on December 4, 1961. The communication states: "You now suggest a new philosophy be adopted that substantially changes the historical approach by Vermont on the apportionment of transmission costs." The suggestion referred to was Citizens' proposal that it be compensated for transmitting its own allocation of St. Lawrence and Niagara power. The letter also refers to an engineering study of the proposition which gave no support to Citizens' proposal.

As indicated above, this proposal had nothing to do with the issues presented by the present petition. The board so ruled at the outset in confining the proceeding to 30 V.S.A. §212. Despite this ruling, Citizens persisted in its effort to introduce this claim against the prior ruling. These repeated attempts finally brought on a reprimand from the chairman. Our review of the record indicates the admonishment was evoked by counsel's refusal to accede to the board's ruling. It apparently was necessary to avoid confusion of the issues and in the interest of orderly procedure.

The remaining question is whether the statutory duties imposed upon the public service board as the representative of the State of Vermont in the purchase and resale of Niagara power, under 30 V.S.A. §211 (a) judicially disqualified the board from conducting proceedings to determine whether an interchange of transmission facilities should be ordered.

In the first place, it is to be noted that the board is not a party to the sub-transmission contract between Velco and Citizens for the distribution of St. Lawrence power. While this instrument bears the approval of the board in its supervisory capacity, the State had no direct financial interest in its terms. Its only concern in the contractual arrangement is to see that the public interest is not compromised.

As far as Niagara power is concerned, there was no sub-transmission contract at the time of the hearing. The board was called upon to direct the transmission and prescribe the terms and conditions by reason of the absence of a voluntary contractual agreement between the principals.

The Court is well aware of the problems which attend the discharge of the statutory duties confided to the public service board. The Legislature has seen fit to call upon that agency to serve as a power authority for the State and to act as a quasi judicial tribunal to settle controversies between public service corporations and the public at large. *Vermont Electric Power Co.* v. *Anderson,* 121 Vt. 72, 84, 147 A.2d 875.

However, in the present appeal, the main thrust of the claim of prejudice is the board's refusal to entertain the appellant's request for additional compensation for transmitting its own purchased power. The board correctly refused to confuse the present proceedings with an issue foreign to the cause then under consideration.

The board reported its findings on all issues material to the cause presented by the petition. Its report on these facts is not questioned. It appears from the record that the appellant has been accorded a full and fair hearing within the requirement of the statute. Contrary to the appellant's bare assertion of a denial of Due Process, no violation of Constitutional guarantees has been demonstrated.

*The order of the public service board is affirmed. Let the result be certified.*