## Petition of Citizens Utilities Company

[ 250 A.2d 844 ]

December Term, 1968

Present: **Holden, C.J., Shangraw, Barney, Keyser, JJ., and Hill, Supr. J.**

Opinion Filed February 12, 1969

*Clifton G. Parker, Esq.,* and *Shea, Gallop, Climenko & Gould,* New York City, for the Petitioner.

*Ryan, Smith & Carbine* and *Porter E. Noble, Esq.,* for Vermont Electric Power Co., Inc.

*David A. Jenkins, Esq.,* for the City of Burlington.

*Paterson, Gibson, Noble & Brownell* for the Villages of Morrisville, Hardwick and Stowe.

*Paul, Frank & Collins* for the Public Service Board.

*Frederick J. Fayette, Esq.,* for Halifax Electric Cooperative, Inc., Vermont Electric Cooperative, Inc., Washington Electric Cooperative, Inc., and Village of Hyde Park.

**Barney, J.** ■ The public service board denied the petition of Citizens Utilities Company for the designation of additional delivery points of allotments of power from the St. Lawrence and Niagara power projects. This power is designated "state power," once received in Vermont by the Vermont Electric Power Company (Velco) from

the Power Authority of the State of New York, and Velco is the state agency authorized to receive and distribute it. Its resale of this state power is subject to the requirement imposed upon the public service board by 30 V.S.A. §211 that the sale be on a non-profit basis to the electric companies within the state, without preference or discrimination. Citizens complains that it receives its allotment of state power at a single delivery point so located that the burden of distributing such power into its system amounts to discrimination when contrasted with the situation of other utilities. This appeal is from a *de novo* hearing held after a remand of a previous proceeding involving the same issue. *In re Petition of Citizens Utilities Co.*, 125 Vt. 388, 216 A.2d 923. See also *Petition of Vermont Electric Power Co.*, 125 Vt. 395, 216 A.2d 918, and *Latourneau* v. *Citizens Utilities Co.*, 125 Vt. 38, 209 A.2d 307.

▌ Although the cited cases thoroughly explore the factual background of this case, a résumé of the essential matters will help give meaning to the disposition of this case. As the advancing party, the burden was on Citizens to establish its claim that the existing distribution to it was discriminatory.

The physical situation of the area serviced by Citizens is unusual. It is a long, narrow territory extending across the most northerly counties of the state, reaching from Alburg in Grand Isle County to Island Pond in Essex County. Its largest load center is Newport. State power is delivered to this system at Highgate, 47.5 transmission miles from Newport. The nature of its service area requires that the system have a higher investment in transmission plant than some other Vermont utilities, irrespective of the delivery point of state power.

Highgate was designated as Citizens' delivery point when the Velco transmission network was put together. At that time Citizens did not take its allotted power share, but reserved the right to recall it on notice. This meant, in effect, that it was not using the delivery point for distributing state power into its own system.

The initial transmission and distribution facilities for state power, by fiscal necessity, were not designed with reference to non-preferential or non-discriminatory distribution. Every delivery point for state power either existed prior to establishment of the Velco transmission system, or was constructed on the basis of engineering necessity for

adequate and economical transmission of power to an allottee. The basic objective was to superimpose a new 115 KV transmission system over the existing lower voltage transmission facilities of the various utilities in the state so as to minimize investment in the construction of new facilities and to make maximum use of existing facilities. This utilization involved the subcontracting by Velco with certain utilities for the use of their transmission lines to get power to utilities out of reach of direct Velco distribution. Citizens performs this service, under contract by order of the board, for six other utilities.

The cost of transmission of state power is allocated by a cost factor attributable to each kilowatt of power distributed. This factor includes transmission costs of Velco and of subcontractors and power losses of Velco and the subcontractors. This procedure insures that all allottees share in the expense of distributing state power to all of the delivery points in the system in proportion to the size of their allotment. A shift in transmission responsibility from an individual utility to Velco or to a subcontract arrangement therefore shifts the expense of that transmission from the utility to all allottees.

Such modifications in the transmission plan have occurred from time to time. The usual procedure has been a proposal of modification by Velco and an approval by the board. At about the time Citizens proposed to accept and recapture its state power allotment it also first petitioned for additional delivery points. In connection with that original petition it sought and obtained a favorable endorsement from Velco. It stipulated with Velco the terms of sale, and subsequently, lease arrangements mutually agreeable for transferring parts of its transmission system to Velco. These arrangements, if approved, would have the effect of moving the delivery point of state power closer to the larger load centers of Citizens' system.

The record discloses that Citizens introduced evidence descriptive of the distance from load centers and internal transmission distances of state power for the other utilities of the state. Comparative data was presented in support of Citizens' contention that its own situation with respect to delivery to its system of state power was so different as to place its rate payers in the position of subsidizing transmissions to other utilities through paying a disproportionate amount of the cost of .bringing state power to the vicinity of its load centers. It also took the position that evidence offered by contesting utilities of the cost to them of Citizens' proposed changes in the transmission arrangements

was evidence of the burden now resting entirely on Citizens' customers.

The issue raised by Citizens is whether or not the existing transmission plan amounted to discrimination against Citizens under 30 V.S.A. §211. No claim is made that there was any deliberate discrimination. Nevertheless, the board, in the first instance, and now this Court, are being asked to decide whether the board's responsibilities to transmit state power to allottees is fulfilled by delivery to points selected on the basis of engineering feasibility, economical delivery and sufficiency of the allottee's line to receive the power.

The response of the board, reflected in the findings, relates the adequacy of Citizens' transmission line at the point of delivery, its engineering practicability and further emphasizes the distinction in treatment resulting to Citizens, if its request is granted. The board correctly points out that this will be the only situation where an allottee will be reimbursed for subtransmission of its own allotment within its system. The board contends that the establishment of this kind of consideration will involve a reevaluation of its delivery policy with respect to numerous other allottees who now undertake thei rown subtransmission to their load centers. It is the board's view that its statutory obligation is accomplished when it delivers state power to the allottee's system and that the internal transmission of that power is the obligation solely of the allottee, not to be distributed in any measure as a cost factor assigned to other allottees.

The argument of Citizens is that this does not meet the contention raised by its evidence and its petition. It is its position that inequalities in subtransmission burdens within an allottee's system unfairly increases electrical costs to its customers and fails to discharge the obligation of the board to furnish state power to allottees "without preference or discrimination" under 30 V.S.A. §211.

■ This contention is entirely dependent upon a construction of 30 V.S.A. §211 presuming to impose upon the board the responsibility of equalizing transmission costs of state power for all allottees. It was argued in support of the board's position, and we think, correctly, that the non-preferential and non-discriminatory requirement of that statute applied only to the *sale* of state power to allottees and wherever *transmission* responsibilities were mentioned in the statute, including recent amendments, this qualification was omitted. Insofar

428

as lack of preference or discrimination imports equality of treatment of allottees, and relates to the *sale* of state power, it is an understandable and justifiable requirement of simple and direct application. Insofar as *transmission* burdens are concerned, equality of treatment requires compensation for accidents of geography and topography, and for irregular load developments and location due to historical or fortuitous development. This would require the board to not only engage in the most complex kind of balancing of compensation but might well also inspire the board, in the exercise of such a function, to assume to direct the allottees in the erection and use of subtransmission facilities. This does not, in any sense, seem to be the intent or purpose of the statutory directive, and we so hold.

■■ If interconnection between parts of the transmission systems in the state is considered by the board, its authority derives from 30 V.S.A. §210. The standards of that statute call for consideration of the interests of consumers of electric power, for consideration of the interests of concerned investors and for concern for the public good. These standards provide the tests for the adequacy of the board's transmission arrangements, and likewise are the standards applicable to changes in those arrangements. The findings demonstrate satisfaction of them. See *Petition of Lyndonville Village,* 121 Vt. 185, 194, 151 A.2d 319.

*The order of the Public Service Board is affirmed. Let the result be certified to that board.*