June 9, } No. 4425.
1955.

OPINION OF THE JUSTICES.

The following resolution adopted by the Senate on May 24, 1955 was filed in this court May 25, 1955:

"Whereas Senate Bill No. 41, entitled an Act to provide assistance for education in the academies, seminaries of learning, colleges and other educational institutions of the State, in new draft pending before the Senate (as printed in the appendix of the Senate Journal for Tuesday, May 17, 1955, Page 21 to 30 inclusive) ; and

"Whereas questions have been raised concerning the constitutionality of said bill;

"Resolved that the Justices of the Supreme Court be respectfully requested to give their opinion on the following question of law:

"Does said bill conflict with or violate the New Hampshire constitution in any of its provisions? Further,

"Resolved that the President of the Senate transmit to the Clerk of the Supreme Court forthwith six (6) copies of this resolution

and of the Senate Journal for May 17, 1955, in the appendix of which said bill (in new draft) is printed, for appropriate action."

The following answer was returned:

*To the Honorable Senate:*

The undersigned Justices of the Supreme Court make the following reply to your request for their opinion on the question of whether Senate Bill No. 41, entitled "An Act to provide assistance for education in the academies, seminaries of learning, colleges and other educational institutions of the state," in new draft, "conflict[s] with or violate[s] the New Hampshire constitution in any of its provisions."

The bill to which your inquiry relates provides for creation of an Authority "as an agency and subdivision of the state" (*s.* 3) for the purpose of making loans for construction at advantageous rates of interest to "any academy, seminary of learning, private school, junior college or college situated in this state" which is incorporated here and operated for charitable purposes, and whose net income is devoted exclusively to such purposes and not distributed to its proprietors, members or stockholders. *S.* 2. The board of directors of the Authority would be charged with the duty of passing upon applications for loans, for the purpose of determining whether they are requested for a project "within the scope of this act, [which] will be of public use and benefit, and can be financed without unreasonable risk of loss to the Authority." *S.* 5.

In addition to furnishing ample security a borrower would be required to contribute to a reserve fund to be held as insurance against loss (*s.* 9), to pay the cost of processing the loan (*s.* 19), and until repayment to hold and use the project for which the loan is made: "for educational purposes, subject to the common and equal right of all reasonably qualified persons to use and enjoy the same." *S.* 18.

The bill would authorize the Authority to issue bonds to provide funds for loans, payable solely out of receipts from loans. It provides that such bonds "shall not be a debt of the state" (*s.* 10) except that the payment of such bonds shall be guaranteed "in the name of the state." *S.* 14. The State Treasurer is authorized to purchase temporary notes of the Authority in amounts "sufficient to enable the Authority to carry out its functions." *S.* 12.

Your inquiry with respect to the validity of the bill is in general terms without reference to particular provisions of the bill, or to any facts which might bear upon its application. Accordingly, the question calls for a general answer. In our opinion the bill is valid upon its face.

The bill is so drafted as to provide only for loans which may be made "without unreasonable risk of loss to the Authority" (s. 5), and hence to the State. It contemplates that the activities of the Authority shall be self-liquidating, so that ultimately no expenditure of public funds may be required in furnishing the aid to be given. On the other hand, the bill would impose obligations upon the State which might require funds to be raised by taxation, and so "stands on equal footing" with a bill which would be certain to require such funds. *Opinion of the Justices,* 88 N. H. 484, 489; *Opinion of the Justices,* 99 N. H. 528.

The fundamental proposition that public funds may not constitutionally be devoted to private purposes has been frequently adverted to. See *Opinion of the Justices,* 88 N. H. 484, and cases cited; *Opinion of the Justices,* 94 N. H. 515; *Opinion of the Justices,* 99 N. H. 528. The furtherance of education is universally regarded as a public purpose and the Constitution expressly imposes upon legislators "the duty . . . to cherish the interests of literature and the sciences, and all seminaries and public schools, [and] to encourage private and public institutions . . . for the promotion of . . . arts, sciences . . . [and] trades." Constitution, Pt. II, *Art.* 83. As was said in *Trustees &c. Academy* v. *Exeter,* 90 N. H. 472, 482-3, "Certainly aid to an educational institution in the State, subject to qualifications not here requiring statement, is an exercise of the protective power . . . . " A later opinion in the same case stated: "An educational institution established for no personal profit and serving only the public benefit is a charity . . . The charity being solely a form of public service, a grant to it is for public use and benefit." *Trustees &c. Academy* v. *Exeter,* 92 N. H. 473, 479. Historical examples of legislative aid to private educational institutions are not lacking. See 7 N. H. Laws 601, 813, 843; Laws 1919, c. 204. The prominent place of such institutions in the history of the state is amply attested. Bouton, History of Education in New Hampshire, New Hampshire Historical Society Collection (1833); Bush, History of Education in New Hampshire (1898); Bishop, Development of a State School System: New Hampshire (1930).

As is the case in the expenditure of any public funds, it must appear that the expenditure will in fact be for the public use. *Opinion of the Justices, supra,* 88 N. H. 484, 488; *Opinion of the Justices,* 99 N. H. 528. Suitable provision is made by Senate Bill No. 41 to insure that any project for which a loan is made "will be of public use and benefit" (*s.* 5), which by implication means that it will serve a purpose which would otherwise not be adequately served. *Opinion of the Justices, supra,* 88 N. H. 484, 488. See *Conway* v. *Water Resources Board,* 89 N. H. 346. *Cf. Opinion of the Justices,* 99 N. H. 528. Adequate standards to guide the action of the directors of the Authority are provided by the statute (*cf. Opinion of the Justices,* 99 N. H. 528) and no unconstitutional delegation of legislative authority is proposed. *Conway* v. *Water Resources Board, supra,* 351-353; *Opinion of the Justices,* 94 N. H. 515, 518.

The further requirement of section 18, that pending repayment of any loan the project shall be held by the institution "for educational purposes, subject to the common and equal right of all reasonably qualified persons to use and enjoy the same," imposes in express terms a trust which otherwise would necessarily arise by implication if the public aid were to be validly granted. See *Eyers Woolen Co.* v. *Gilsum,* 84 N. H. 1, 14, 15. Thus in *Holt* v. *Antrim,* 64 N. H. 284, 287, it was held that a private academy, as lessee without payment of rent, of a building to be built by public funds, would "hold it in trust for the public service to which it will be devoted by the statute and the constitution," and that the "common and equal privilege of use will be enforcible by adequate remedies." See *State* v. *Jackson,* 69 N. H. 511, 524.

Whether the bill if enacted will prove constitutional in its application to all projects for which loans might conceivably be requested is a question not presented (see *Opinion of the Justices,* 99 N. H. 519), and which it is not our province to ascertain in advance of the findings which the bill would require with respect to particular projects. *Opinion of the Justices,* 88 N. H. 484, 491. Issues which may arise in application of the act to individual projects can neither be determined nor decided in advance of their presentation. *Opinion of the Justices,* 84 N. H. 559, 582. See also, *Opinion of the Justices,* 97 N. H. 533, 540.

Considered with relation to the test of public or private benefit, it is our opinion that Senate Bill No. 41 is valid in its general provisions and not in conflict with the Constitution.

540

Chief Justice *Kenison,* as trustee of an academy, asks to be excused from expressing his views, for reasons which in his belief may disqualify him.

LAURENCE I. DUNCAN.
AMOS N. BLANDIN, JR.
EDWARD J. LAMPRON.
JOHN R. GOODNOW.

June 9, 1955.

*Richard F. Upton,* for the New Hampshire Association of Independent Schools and Colleges, for the bill.

*Burns, Calderwood & Bryant,* for the Roman Catholic Bishop of Manchester, St. Anselm's College, Rivier College, Mount Saint Mary's College and Notre Dame College, also for the bill.