# Frederick M. Reed, Attorney General v. O. Fay Allen, Jr. et als

[153 A2d 74]

May Term, 1959.

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed June 16, 1959.

*Frederick M. Reed,* Attorney General, *pro se.*

*Henry F. Black, Peter P. Plante* and *Richard E. Davis,* all *pro se.*

**Hulburd, C. J.** This is a petition for a writ of prohibition brought to this Court by Frederick M. Reed as attorney general of the state of Vermont whereby he seeks to restrain the petitionees from taking depositions for use in criminal cases under No. 217 of the Acts of 1957.

On November 18, 1958, a grand jury in Orange County Court returned indictments against Robert O. Welch and Frank Carpenter, charging each with the first degree murder of one Orville Gibson. These indictments were docketed in Orange County Court under Nos. 9720 and 9721 respectively. Petitionees Henry F. Black and Peter P. Plante appear as attorneys and counsel for the said Robert O. Welch in connection with the said charge of murder pending against him. Petitionee Richard E. Davis appears as attorney and counsel for the said Frank Carpenter in connection with the said charge of murder pending against the latter.

Under date of February 17, 1959, petitionee Allen, a justice of the peace, issued *Notices of Taking Depositions.* One such notice was captioned "State of Vermont vs. Robert Ozro Welch—Orange County Court No. 9720." The other notice was similarly captioned "State of Vermont vs. Frank Carpenter—Orange County Court No. 9721." These notices stated that "In accordance with the provisions of No. 217 of the Public Acts of 1957 notice is hereby given of the taking of the testimony of the following named individuals, by depositions upon oral examination before the undersigned magistrate***." They further commanded petitioner Reed, as attorney general, and John Morale, as state's attorney in and for Orange County to appear before petitionee Allen, justice of the peace, to attend the taking of testimony of the persons named in each of the notices. As to Welch the date set was March 11, 1959 and as to Carpenter, it was March 12, 1959.

Upon receiving these notices, the attorney general reacted by filing in Orange County Court identical motions,

(one as to each respondent) in accordance with a provision of the act under which the petitionees were seeking to obtain the depositions. These motions indicated that certain of the persons whose depositions had been ordered were witnesses before the grand jury, that some of them were also state police officers who had investigated the facts giving rise to the indictments against Welch and Carpenter, and that one of such persons, Harvey B. Otterman, Jr., as the then state's attorney of Orange County, had presented evidence to the grand jury which returned such indictments.

Hearing was had on these motions on March 5, 1959 and late in the afternoon of March 9, 1959, the county clerk was notified by the presiding judge that the State's motions had been denied with exceptions to the State. The following day, which was the day before that fixed for the taking of the first of the depositions, the petitioner came to this Court seeking a writ of prohibition. A temporary writ immediately issued staying the taking of the depositions.

The complaint thus addressed to us, after setting forth the facts which we have related, goes on to specify the following grounds as warranting the issue of the writ. "(a) That No. 217, Acts of 1957, under and pursuant to the authority of which act the depositions here in question are sought, provides for depositions in civil cases only, and does not authorize nor permit the taking of depositions in criminal cases;

"(b) That of the persons named in said Notices of Taking of Depositions whose testimony is sought to be taken, all but three were witnesses before the Grand Jury which returned indictments for murder against the said Welch and the said Carpenter;

(c) That evidence presented to a Grand Jury is not available to persons indicted thereby unless so ordered by the Supreme Court or a County Court, yet the procedure sought to be used herein through depositions would render null and void the law relating to such evidence."

Following the foregoing, the attorney general alleged that "the unrestrained use of deposition procedures in criminal cases would be a complete departure from the criminal pro-

cedure which has developed in Vermont over the years * * * that it might or would subvert the processes of justice by subjecting witnesses to intimidation, fear, threats and coercion at the hands of persons accused of crime or their agents * * * " and that "the gravity of the matters complained of and the exigency of the situation presented" require this Court to act as requested and that "no plain, speedy, efficient or adequate remedy (is) available to the State or its representatives to prohibit the taking of the depositions hereinbefore referred to except an order of this Honorable Court in the form and manner hereinafter prayed for * * * ."

Petitionee Allen has appeared *pro se* but has filed no pleadings. Petitionees Black, Plante and Davis have appeared and filed demurrers and answers which they seek to support by their combined identical briefs. They have reduced their contentions to two propositions: 1. A writ of prohibition is not proper under the facts and law applicable to this case 2. No. 217 of the Acts of 1957 authorizes the taking of depositions in criminal cases.

Since this second proposition is of such importance that it ought not to go undertermined in any event, we will proceed at once to give it our attention.

The only part of the act to which the petitionees have invited our special attention is the opening section which reads as follows:

"Section 1. *When depositions may be taken.* Any party to any action pending in a county court, court of chancery or municipal court may take the testimony of any person, including a party, by deposition upon oral examination or written interrogatories for the purpose of discovery or for use as evidence in the action or for both purposes * * * ."

Having singled out the foregoing section, the petitionees further reduce their focus to its opening words, "any party to any action," as being "the only words in the Act which pertain directly to the question of who may take a deposition." They argue that the word "action" is broad enough to include both criminal and civil causes, and, since this is so, the Act must be understood to have included both.

■ No doubt the word "action" may at times have the breadth of meaning ascribed to it by the petitionees. Cases have so held. Other cases, however, in a different context have reached an opposite conclusion. All this only serves to show that the word "action" is not to be considered by itself, that it confronts us with nothing determinative. We must look at the act as a whole to discover its meaning. *First National Bank of Boston* v. *Harvey*, 111 Vt 281, 292, 16 A2d 184.

■ This brings us to the fundamental rule in the construction of statutes: it is to ascertain and give effect to the intention of the Legislature. *Davidson* v. *Davidson*, 111 Vt 24, 27, 9 A2d 114. All other rules of construction are but applications of the master rule itself and are mere implementation of it. The question arises, then, what is there which will throw light on the Legislature's intent in enacting No. 217 of the Acts of 1957?

■ At the outset it is essential to have in mind that no right to take depositions existed at common law. *Pingry* v. *Washburn*, 1 Aik. 264, 268. Later, in the case of *Clark's Admr.* v. *Wilmington Savings Bank*, 1915, 89 Vt 6, 8, 93 A 265, 266, the Court stated it to be "well established doctrine that the authority to take testimony by way of deposition is in derogation of the rules of the common law and has always been strictly construed." *In re Petition of Central Vt. Public Service Corp.*, 115 Vt 204, 207, 55 A2d 201, and *In re Peters Estate*, 116 Vt 32, 35, 69 A2d 281, are to the same effect.

■ The construction which the petitionees offer is not strict but expansive and it gets them into immediate difficulty. If followed out, its inclusiveness would be such that the State, on its part, would be free to take the depositions of respondents. Clearly such a procedure would run counter to the constitutional privilege as to giving evidence against one's self. In construing any statute the Court will presume that the Legislature intended to carry out the direction of the Constitution. *City of St. Albans* v. *Avery*, 95 Vt 249, 260, 114 A 31. Where a statute is susceptible of two constructions, one of which supports the act and the other renders it unconstitutional, the former will

be adopted though the latter may be the more natural interpretation of the language used. *State* v. *Clement Nat. Bank*, 84 Vt 167, 200, 78 A 944. Moreover, the construction contended for by the petitionees would, in practical effect, abrogate V. S. 47, §§2369 and 7484 which provide for the controlled secrecy of grand jury and inquest proceedings respectively. It seems highly doubtful that the Legislature, after having been at some pains to keep inquests and grand jury procedures secret, would open the back door by a deposition act which would nullify previous enactments in that regard. Since statutes *in pari materia* are to be construed with reference to each other as parts of one system, it is unthinkable that the Legislature would have intended that No. 217 of the Acts of 1957 should apply to criminal cases, and so work a radical upheaval in our criminal procedure, without a clear statement of its intention. *Newman* v. *Garfield*, 93 Vt 16, 19, 104 A 881, 5 ALR 1507.

█ We do not think that it is too much to say that the construction urged upon us by the petitionees would lead to consequences bordering on the absurd. A construction of a statute leading to an absurd consequence must always be avoided if possible. *State* v. *Reynolds*, 109 Vt 308, 310, 1 A2d 730.

█ If there were any doubt remaining,—and we don't see how there could be—the legislative intent as gathered from the history of its enactment is determinative. No. 217 of the Acts of 1957 was patterned on and closely follows the Federal Rules of Civil Procedure pertaining to depositions. Statements to that effect were made in reporting the bill at the time of its passage. The language of the opening section, quoted earlier, is the language of Rule 26 of the Federal Rules of Civil Procedure except for a slight addition, the effect of which is to exclude justice and probate courts from its operation. In adopting this portion of the Federal Rules of Civil Procedure, we adopted the established interpretation as to its application, i.e., to civil cases only. *In re Martin's Estate*, 96 Vt 455, 457, 120 A 862; *Giguere* v. *E. B. & A. C. Whiting Co.*, 107 Vt 151, 157, 177 A 313, 98 ALR 196. Criminal cases are specifically provided for in the Federal Rules of

Criminal Procedure, depositions in such cases being covered by Rule 15 (a). We, too, have our statute relative to depositions in criminal cases. See V. S. 47, §2414 and §§2418-2420. No. 217 of the Acts of 1957, although it repealed numerous sections of our old law pertaining to the taking of depositions in civil cases, left the existing law as to depositions in criminal cases intact. In enacting the law that it did, the Legislature left no doubt but that the law was to apply to civil actions only. Other jurisdictions have adopted the Federal Rules of Civil Procedure as to depositions substantially as we have. In two states attempts were made, as here, to use such adopted rules to take depositions, in criminal cases. In both, the courts held that the rules had no application to criminal procedure. See *State* v. *Christensen*, 40 Wash 329, 242 P2d 755; *Ex parte Denton*, 1957, 266 Ala 279, 96 So2d 296.

We think that it is clear beyond all doubt that when the petitionees sought to take depositions in the pending criminal cases as they did, they were embarking on a procedure which No. 217 of the Acts of 1957 did not authorize.

The only question remaining is whether a writ of prohibition was a proper method to prevent the illegal assumption of authority which was impending. We think it was. The petitionees by their concerted efforts had set about to compel certain people to give testimony by way of deposition under an act which did not authorize such an undertaking. This was no mere ministerial procedure. The act under which the petitionees were purporting to proceed provided that a witness refusing to depose might be committed to jail (Sec. 13) and that if he failed to obey a subpoena to attend *without reasonable excuse* he should be subject to a penalty (Sec. 12). These are judicial and not ministerial considerations. Something more was involved here than the mere administering of an oath. It was an attempt to subject individuals to the compulsion of a law under which the petitionees purported to act but without authority. Confronted with this situation, the attorney general first sought to deal with it by filing a motion in Orange County Court that the depositions not be taken in accordance with §14 of the Act itself. This motion was denied

by the county court and properly so. No authority existed in the county court to regulate a procedure of this sort. It was entirely outside the Act. To have excepted to the county court's ruling and come here on a bill of exceptions would have been worse than useless, since §14 was not available to the county court as a basis of action in criminal cases, just as the act itself was not available to the petitionees. No adequate relief existed in this quarter. The petitionees have suggested that the attorney general might have resorted to declaratory judgment procedure, ill-adapted as it is for meeting an exigency. We think in the circumstances of this case that the relief which might have been so obtained would not have afforded the State the plain, speedy and adequate remedy necessary to meet the genuine exigency created by the petitionees' action. The right to prohibition is defeated not by the existence, but by the adequacy, of another remedy. *Faver* v. *Cleveland Circuit Court*, 216 Ark 792, 227 SW2d 453; *State ex rel. O'Connor* v. *District Court*, 219 Iowa 1165, 260 NW 73, 80, 99 ALR 967. Indeed we have held in *In re Mattison's Petition*, 120 Vt 459, 465, 144 A2d 778, 781, that, as a matter of discretion, the writ will issue in any event when the petitionees are clearly without jurisdiction to act. This is especially true where it is in the public interest to have a question settled as soon as possible. If the State had resorted in this case to any remedy less expeditious, an interval might well have resulted during which criminal prosecutions throughout the State would have been brought to a standstill while awaiting the question's determination, first in county court and thereafter in this one. We think we have here just the sort of situation that a writ of prohibition was designed to meet. To put it in homely phraseology, we think the attorney general chose the right tool for the job before him.

*It is ordered that a writ of prohibition issue, in the name of the State, signed by the Clerk, directed to the petitionees, prohibiting them from proceeding further under No. 217 of the Acts of 1957 in the taking of the proposed depositions or the depositions of any other persons in connection with the prosecutions herein referred to and that said petitionees cease from proceeding in the premises.*

*Costs in this Court to the petitioner, for the use and benefit of the State of Vermont to be recovered from those petitionees other than petitionee Allen.*