**Dresden School District v. Norwich Town School District et al**

[ 203 A.2d 598 ]

Special Term, July 27, 1964

Present: **Holden, C. J., Shangraw, Barney, Smith and Sylvester, JJ.**

Opinion Filed September 14, 1964

*Black and Plante* for Dresden School District.

*John W. Brockway* for Norwich Town School District.

*Chester Ketchum,* Deputy Attorney General, for the State.

**Barney, J.** Counterpart legislation in Vermont and New Hampshire have authorized the creation of the plaintiff, an interstate school district. No. 240 of the Acts of 1963, as amended (Vermont) ; N. H. Laws 1961, ch. 116. The adjoining towns of Norwich, Vermont, and Hanover, New Hampshire, have entered into an implementing agreement as authorized by these statutes, and the citizens of these towns have confirmed the arrangements by vote. The approval of the United States Congress was sought and received for the joint plan as an interstate compact. Public Law 88-177, 88th Cong., 77 Stat. 332 (1963).

An increase in school population provided the impetus. Norwich, Vermont, and Hanover, New Hampshire, are separated only by the state boundary, the Connecticut River. Many citizens of Norwich are associated with Dartmouth College in Hanover, or with occupations there stimulated by its presence. Until now, Hanover has provided secondary education to Norwich students on a tuition basis, paid through the Norwich town school district, since it maintains no local high school. The total enrollment in Hanover High School has grown to a point where new construction is necessary if Norwich students are to continue to be accepted. About one-quarter of all the students come from Norwich. Without them, Hanover might be able to defer construction. With help from Norwich, an enlarged and improved joint high school is possible.

Direct participation by Norwich in construction financing is obstructed by the presence of the state line. Similarly, Hanover is prevented from giving Norwich citizens any voice in the operation of the school. As a result, resort was had to interstate agreement to overcome the barrier of the political boundary. The new interstate school district revived the name of "Dresden," which belonged to Hanover at a time when it once undertook to join Vermont. See Holden, Dresden Revisited, 6 N.H.B.J. 297 (1964).

The electorate of Dresden consists of all eligible voters of Norwich and Hanover. Although authority has been given to Dresden to conduct both elementary and secondary schools on behalf of the two communities, at present it proposes to confine itself to secondary school operations. To do this, it proposes to acquire in its own name the present Hanover High School property and enlarge the plant through new construction.

Under the statutory compact arrangement, expenditures properly approved by Dresden voters become a binding charge against the regular school districts of Norwich and Hanover. The amount each is to raise and turn over to Dresden is determined by a formula incorporated in the compact agreement, based on the number of pupils attending from each town. The Norwich and Hanover school districts will continue to function for the purpose of raising tax money for Dresden and providing necessary school bus service, as well as furnishing primary education facilities for each town for the present.

Approval has been given to the total arrangement for creating and administering Dresden school district by many agencies. On the local level, it has come from both school boards. On the state level, the respective Attorneys General, Secretarys of State and Commissioners of Education have concurred. On the federal level, the Departments of Justice and of Health, Education and Welfare, as well as the United States Congress and the President, have endorsed the compact. See Senate Judiciary Report, No. 616, 88th Cong. 1st Sess. (October 29, 1963).

The people of the two towns, voting in a Dresden meeting, approved an appropriation for high school purposes. As contemplated by the statutory compact, Dresden requested both Hanover and Norwich to provide the proportionate share under the formula. First Hanover, in attempting to market its own bonds for this purpose, found counsel for the bond marketing agency unwilling to give an

approving opinion as to their validity. This obstacle was overcome through a declaratory judgment proceeding in which Chief Justice Kenison, speaking for the Supreme Court of New Hampshire, assured bonding counsel that there was a legal and binding obligation on Hanover to issue the bonds at the behest of Dresden, itself a valid body politic: *Dresden School District* v. *Hanover School District,* 105 N. H. 286, 198 A.2d 656, 659.

█ Next, when Norwich attempted to issue its bonds based on the demand of Dresden, it was confronted with the same difficulty. As a result, these declaratory judgment proceedings were made necessary to deal again with substantially the same issues. The controversy is fundamentally concerned with the enforceability of bonds issued by Norwich to finance its obligations to Dresden, and the questions raised will be examined in that context. These questions have been sent to this Court from the tribunal below by certification, thereby confining our consideration to the issues raised by these inquiries. 12 V.S.A. §2386; Supreme Court Rule 2A; *Winter* v. *Unaitis,* 123 Vt. 372, 375, 189 A.2d 547.

The first question certified is: "Does No. 240 of the Public Acts of 1963 involve an unconstitutional delegation of the sovereignty of the State of Vermont?"

█ The propriety of giving to local municipalities the power to deal with local matters is well settled. *Village of Waterbury* v. *Melendy,* 109 Vt. 441, 448, 199 Atl. 236. Traditionally, this has included delegation to local officials the financing and administration of local schools. *Buttolph* v. *Osborn,* 119 Vt. 116, 121, 119 A.2d 686. Furthermore, the people of the State of Vermont have now, by amendment, incorporated in Section 64, Chapter II of the Vermont Constitution, a provision permitting the Legislature to make provision for the convenient instruction of youth otherwise than by requiring schools to be maintained in each town. Our constitution is, in powers not surrendered to the Federal government, the single great restraint on the autonomy of the Legislature as the repository of the lawmaking power of the people. *Burlington* v. *Central Vermont Railway Co.,* 82 Vt. 5, 9, 71 Atl. 826. It is, therefore, within the authority of the Legislature to implement the association of units of local government for the purpose of jointly operating school facilities.

■ The prospect that tax money may be invested outside the state in an agency not necessarily under state control does not violate our constitution. This issue was laid to rest in *Bennington* v. *Park,* 50 Vt. 178, 206, where the right of the Legislature to authorize a municipality to invest public funds in an out-of-state railroad was upheld. Much of the discussion of legislative power in that case, ably expounded by Justice H. Henry Powers, disposes of questions of limitations of legislative authority suggested here.

If there is a question left, it must relate to the circumstance that New Hampshire voters participate in the imposition of a financial obligation on a Vermont town. The reverse is also true. But there is a significant difference between the situation before us and one where a legislature abandons to others its sovereign responsibilities. The difference lies in the presence of an interstate compact arising out of counterpart legislation. See Zimmerman and Wendell, The Law and Use of Interstate Compacts, p. 52 (1961).

■ Compacting parties exchange for relinquished sovereign control specific contractual definitions of rights and obligations in the area of compact. Control by these contractual provisions effectively replaces the sovereign control jointly relinquished, and avoids the prospect of an abdication of legislative duty. This is a general attribute of the treaty-making powers of fully sovereign nations, available to the individual states of the United States in dealing with each other, but only by agreement or compact made within the ambit of Congressional consent. U. S. Const. Art. I, §10. But this impediment is not based on any prohibited delegation of sovereignty, but on the preservation of the Union, and disappears when Congressional consent is obtained, as it was here. *Virginia* v. *Tennessee,* 148 U. S. 503, 519; see also Thursby, Interstate Cooperation, ch. III (1953); Frankfurter and Landis, The Compact Clause of the Constitution— A Study in Interstate Adjustments, 34 Yale L. J. 685, 694-5 (1925). In this light it has not been made to appear that participation in the compact creating Dresden School District represents any unconstitutional delegation of sovereignty.

These considerations form a large part of the answer to the second question passed up for determination. It reads: "Is the Dresden District lawfully organized and existing under the laws of the State of Vermont?" From the foregoing it is clear that there is no constitutional obstacle to Vermont's participation in the compact arrangements

creating Dresden. Nor does it appear that this second question is raised in connection with any technical failure to comply with any statutory requirements incident to the establishment of any Vermont school district, or of Dresden in particular.

■ The power of the Legislature to create subordinate government entities for purposes of dealing with local affairs is broad enough to include such units deriving from compact agreements. Sections 6 and 65 of Chapter II of the Vermont Constitution have not been and ought not to be so narrowly construed as to abort the inherent sovereign power of this State to enter proper interstate compacts. The power of the Legislature to create necessary agencies to implement and administer governmental functions is unquestioned, so long as constitutional prohibitions are observed, including the requirement of separation of powers. *Sabre* v. *Rutland R. R. Co.*, 86 Vt. 347, 362, 85 Atl. 693. With constitutional control preserved through the compact device, Dresden School District is a lawfully organized entity under the laws of the State of Vermont. See *Dresden School District* v. *Hanover School District, supra,* 105 N. H. 286, 198 A.2d 656, 659.

*The first question certified is answered in the negative; the second question certified is answered in the affirmative; and the cause is remanded.*