# OPINIONS OF THE JUSTICES.

## OPINION OF THE JUSTICES TO THE SENATE.

*Educational Facilities Authority. Education. Constitutional Law*, Use of public money or property, "Anti-Aid" amendment, Education, Borrowing by Commonwealth, Credit of Commonwealth, Public purpose, Establishment of religion. *Words*, "Public money."

Legislation creating an Educational Facilities Authority as a body politic and corporate and public instrumentality to assist institutions for higher education in the construction and financing of "projects" would not violate the "Anti-Aid" prohibitions of art. 46, § 2, of the Amendments of the Massachusetts Constitution, or the second sentence of art. 62, § 1, as appearing in art. 84, if the legislation did not provide for any grant or appropriation of public money or property or loan of public credit in connection with rendering such assistance. [783-784,785]

An Educational Facilities Authority proposed to be created by a certain pending legislative bill as a body politic and corporate and public instrumentality would have an existence independent of the Commonwealth, so that borrowings by the authority would not be borrowings by the Commonwealth and would not be subject to the first sentence of art. 62, § 1, of the Amendments of the Massachusetts Constitution, as appearing in art. 84, or to § 3 of art. 62. [785]

A public purpose would be served if, by means of an Educational Facilities Authority created as a body politic and corporate and public instrumentality, institutions for higher education, both public and private, were given assistance in the construction and financing of "projects." [785-786]

Legislation creating an Educational Facilities Authority as a body politic and corporate and public instrumentality to assist institutions for higher education in the construction and financing of "projects" would not violate the prohibition against establishment of religion in the First Amendment of the Federal Constitution merely because the assistance might be rendered to institutions "operated by a religious order or church" [787-788]; but such prohibition would be violated if institutions "maintained for the training of ministers, rabbis, priests or other members of religious orders" were included in the institutions to be assisted [788].

On March 27, 1968, the Justices submitted the following answers to questions propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order of the Senate adopted on February 26, 1968, and transmitted to us on February 28. The order recites the pendency before the General Court of a bill, Senate No. 869, a copy of which is transmitted with the order. The bill (§ 2) provides that the statute, if and when enacted, may be referred to as the "Commonwealth of Massachusetts Educational Facilities Authority Act."

The bill has more than twenty pages. The order contains recitals to which we now refer. The bill creates an authority composed of seven members to be appointed by the Governor. It will be a body politic and corporate the exercise of whose powers shall be deemed to be the performance of an essential public function (§ 4 [a]). The purpose of the authority shall be to assist institutions for higher education in the construction, financing, and refinancing of projects (§ 5). An institution for higher education is defined (§ 3 [e]) as "an educational institution situated within the commonwealth which by virtue of law or charter is a public or other nonprofit educational institution empowered to provide a program of education beyond the high school level." The definition does not distinguish among public, private, and sectarian institutions. "Bonds" or "revenue bonds" are defined in § 3 (d) as "revenue bonds of the authority issued under the provisions of this act, including revenue refunding bonds, notwithstanding that the same may be secured by mortgage or the full faith and credit of a participating institution for higher education or any other lawfully pledged security of a participating institution for higher education." The authority may mortgage any project and the site thereof for the benefit of the holders of revenue bonds issued to finance such project (§ 5 [k]) and (§ 10 [d] [10]). Any contract with the holders of bonds of the authority may provide for the pledging of all

or any part of the revenues of a project, or any revenue producing contract made by the authority with any individual or body, public or private, to secure the payment of such bonds (§ 10 [d] [1]). Grave doubt exists as to the constitutionality of the bill, if enacted into law.

Other provisions of the bill not mentioned in the recitals of the order are these. Of the members of the authority at least one is to be a trustee, director, officer, or employee of an institution for higher education, at least one is to be a person having a favorable reputation for skill, knowledge, and experience in State and municipal finance, and at least one is to be a person having a favorable reputation for skill, knowledge, and experience in the building construction field (§ 4 [a]). The authority may charge to and apportion among participating institutions its administrative costs and expenses (§ 5 [n]). The revenue bonds shall not be deemed to constitute a debt or liability of the Commonwealth or of any political subdivision or a pledge of their faith and credit. Neither the Commonwealth nor the authority shall be obligated to pay principal or interest except from the revenues of the project for which the bonds are issued (§ 12). The authority is authorized to fix charges for the services furnished by each project so as to provide funds sufficient to pay its cost of maintenance and operation as well as principal and interest on bonds of the authority issued on its account (§ 13). All expenses incurred in carrying out the act shall be payable solely from funds provided under the act, and no liability or obligation shall be incurred by the authority beyond the extent to which moneys shall have been provided under the act (§ 6). Neither the authority nor its agent shall be required to pay any taxes or assessments upon or in respect of a project or any property acquired or used by the authority or its agent under the act or upon the income thereof, and bonds issued under the act, their transfer and income, including profit on their sale, shall be free from taxation of every kind by the Commonwealth or its political subdivisions (§ 16). When the principal and interest on particular bonds are paid or ade-

quate provision made to that end, the participating institution shall have title to the project free of encumbrances (§ 8).

The questions are:

"1. Would assistance to an institution of higher education in the construction, financing and refinancing of projects, as provided in the bill, violate section 2 of Article XLVI of the Amendments to the Constitution if such institution inculcates denominational doctrine or if such institution is not publicly owned and under the exclusive control of public officers?

"2. Is the bill subject to the provisions of the first sentence of section 1 of Article LXII of the Amendments to the Constitution, as appearing in Article LXXXIV of said Amendments? (See Massachusetts Bay Transportation Authority vs. Boston Safe Deposit and Trust Company, 348 Mass. 538, 558).

"3. Would assistance to an institution for higher education in the construction, financing and refinancing of projects, as provided in the bill, violate the second sentence of section 1 of said Article LXII, as so appearing, if such institution is privately owned and managed? (See Massachusetts Bay Transportation Authority vs. Boston Safe Deposit and Trust Company, 348 Mass. 538, 558).

"4. Is the bill subject to the provisions of section 3 of Article LXII of the Amendments to the Constitution? (See Ayer vs. Commissioner of Administration, 340 Mass. 586).

"5. Would the provisions of the bill violate the constitutional principle that public money shall not be used except for a public purpose, if assistance thereunder is given to privately owned and managed institutions? (See Opinion of the Justices, 351 Mass. 716).

"6. Would assistance to an institution for higher education in the construction, financing and refinancing of projects, as provided in the bill, violate the First Amendment of the Constitution of the United States [a] if such

institution is operated by a religious order or church, or
[b] maintained for the training of ministers, rabbis, priests
or other members of religious orders?"

We invited briefs from interested persons to be filed by
March 15. In response, briefs or other data were filed by
the Senate Counsel, lawyers from three firms, all accustomed
to passing upon the validity of bonds, and by lawyers on
behalf of the American Jewish Congress, New England
Region.

1. The first question raises the validity of assistance to a
participating institution on two conditions quoted from art.
46, § 2, of the Amendments, which, as presently pertinent,
provides: ". . . no grant, appropriation or use of public
money or property or loan of public credit shall be made or
authorized by the commonwealth or any political division
thereof for the purpose of founding, maintaining or aiding
any school or institution of learning, whether under public
control or otherwise, wherein any denominational doctrine
is inculcated, or any other school, or any college, . . . in-
stitution, or educational, charitable or religious under-
taking which is not publicly owned and under the exclusive
control, order and superintendence of public officers or
public agents authorized by the commonwealth or federal
authority, or both . . . ."

This is the "Anti-Aid" amendment, so called, adopted
during the Constitutional Convention of 1917–1918. See
*Worcester* v. *New England Inst. & New Eng. Sch. of Ac-
counting, Inc.* 335 Mass. 486, 489–490. This was subse-
quent to *Opinion of the Justices*, 214 Mass. 599, where it
was said (p. 601) that "there is no constitutional prohi-
bition of appropriations for higher educational institutions,
societies or undertakings under sectarian or ecclesiastical
control." We have held that the amendment did not change
the public character of those educational institutions al-
though it did limit the way in which public money can be
spent for the general purpose. *Worcester* v. *New England
Inst. & New Eng. Sch. of Accounting, Inc., supra,* 490–493.

See e.g. *Assessors of Dover* v. *Dominican Fathers Province of St. Joseph,* 334 Mass. 530, 540. The amendment's substantial purpose was to prevent direct assistance to private or sectarian charitable institutions and to preclude expenditure of public funds or appropriations for them.

The bill effectually guards public funds from expenditures in violation of art. 46. The authority it creates will receive funds to implement the general secular public purpose without appropriation of public funds or pledge of public credits. The sources of the funds referred to are identified in the bill; the "issue [of] bonds, bond anticipation notes and other obligations of the authority" (§ 5 [f]); "rates, rents, fees and charges . . . for the services furnished" (§ 5 [g]); proceeds of loans and grants from any public agency and "loans, grants, aid or contributions from any source of either money, property, labor or other things of value" (§ 5 [j]); interest paid on loans (§ 5 [l] [m]); and repayment of charges apportioned among participating institutions for administrative costs and expenses (§ 5 [n]). There is no grant or appropriation of public money. "Public money" is money raised by taxation. See *Opinion of the Justices,* 337 Mass. 777, 781. There is no grant or appropriation of public property. *Massachusetts Soc. for the Prevention of Cruelty to Animals* v. *Commissioner of Pub. Health,* 339 Mass. 216, 229–230. There is no loan of public credit. This result is ensured by the language of § 12. Nothing could be clearer than the provisions of § 6 limiting expenses to payments from funds provided under the authority of the act and the provisions of § 7 making the same limitation on the purchase of property.

To question 1, we answer, "No."

2. Question 2 asks whether the bill is subject to the first sentence of § 1 of art. 62 of the Amendments as further amended by art. 84. The sentence is, "The commonwealth may give, loan or pledge its credit only by a vote, taken by the yeas and nays, of two-thirds of each house of the general court present and voting thereon." The amendment is aimed at borrowing by the Commonwealth. *Opinion of*

*the Justices,* 337 Mass. 800, 807–808. *Ayer* v. *Commissioner of Admn.* 340 Mass. 586, 591–592. The question refers to *Massachusetts Bay Transp. Authy.* v. *Boston Safe Deposit & Trust Co.* 348 Mass. 538, where we held that borrowing by a public authority which has a substantive existence independent of the Commonwealth does not constitute borrowing by the Commonwealth. The result is the same notwithstanding that the Commonwealth might guarantee temporary notes or become additionally and substantially committed to the payments due on certain bonds (p. 556). Here, we are of opinion that the Educational Facilities Authority will have an independent existence of its own. It will, therefore, be that authority which borrows, not the Commonwealth. As hereinbefore stated, there is no loan or pledge of the credit of the Commonwealth.

To question 2, we answer, "No."

3. Question 3 asks whether the proposed assistance to an institution of higher learning would violate the second sentence of § 1 of art. 62, as further amended by art. 84. The sentence is, "The credit of the commonwealth shall not in any manner be given or loaned to or in aid of any individual, or of any private association, or of any corporation which is privately owned and managed."

As already stated, there is no such loan of public credit.

To question 3, we answer, "No."

4. Question 4 asks whether the bill is subject to § 3 of art. 62. It refers to *Ayer* v. *Commissioner of Admn.* 340 Mass. 586, but there we held (pp. 590–598) that the proposed office building was an artifice or device to evade § 3. There is no such problem with the bill. See *Massachusetts Bay Transp. Authy.* v. *Boston Safe Deposit & Trust Co.* 348 Mass. 538, 556.

For reasons hereinbefore stated, we answer question 4, "No."

5. Question 5 asks whether the bill would violate the constitutional principle that public money shall not be used except for a public purpose, if assistance is given to privately owned and managed institutions. The *Opinion*

*of the Justices,* 351 Mass. 716, mentioned in the question, related to the Massachusetts Housing Finance Agency Law, which (pp. 718, 728) contained a fatal provision for the expenditure of money raised by taxation for a project not public in nature.

Our resolution of this question is largely governed by what we said in discussing question 1. In addition, reliance may be placed on provisions of the bill, such as § 4 (a), where the "authority is constituted a public instrumentality and the exercise by the authority of the powers conferred by this act shall be deemed and held to be the performance of an essential public function." As was said in *Worcester* v. *New England Inst. & New Eng. Sch. of Accounting, Inc.* 335 Mass. 486, 490: "As the more recent of the cases show, the privately operated institutions have continued to enjoy the tax exemptions for which they qualify because of their public charitable nature. The [anti-aid] amendment of course has not made it any less true that education of the public is in the category of general objectives for which public money can be spent."

Here it is pertinent to quote from the "Declaration of Policy" in § 1 of the bill. "[I]t is the purpose of this act to provide a measure of assistance and an alternative method to enable institutions for higher education in the state to provide the facilities and structures which are sorely needed to accomplish the purposes of this act, all to the public benefit and good . . . ." The authority's assistance to participating private institutions in aid of a public purpose is not rendered unconstitutional simply because individuals as such may profit. *Opinion of the Justices,* 175 Mass. 599, 600. *Allydonn Realty Corp.* v. *Holyoke Housing Authy.* 304 Mass. 288, 292–293. *Opinion of the Justices,* 322 Mass. 745, 749. *Opinion of the Justices,* 349 Mass. 794, 798–800.

To question 5, we answer, "No."

6. We shall divide question 6 into its two parts. It inquires whether there is a violation of the First Amendment to the Constitution of the United States in assistance to an

institution (a) which "is operated by a religious order or church" or (b) is "maintained for the training of ministers, rabbis, priests or other members of religious orders."

The material part of the First Amendment is, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . .."

6 (a). No prohibition of the free exercise of religion is apparent. The real issue is reduced to whether we can discover substantial ground for belief that the Supreme Court of the United States would decide that the assistance in the construction and financing of projects permitted by the bill to a participating institution for higher learning would amount to the establishment of religion.

The promotion of secular higher education is a public purpose. *Dexter* v. *Harvard College,* 176 Mass. 192, 194–195. *Opinion of the Justices,* 214 Mass. 599, 601. *Worcester* v. *New England Inst. & New Eng. Sch. of Accounting, Inc.* 335 Mass. 486, 489–490. See *Wheaton College* v. *Labor Relations Commn.* 352 Mass. 731, 735. We construe the bill as making its projects available to all institutions for higher education without discrimination and without regard to any religious affiliation or identification with any particular denomination or church, but with regard to the secular nature of the project for which aid is sought. No institution should be disqualified from participation merely because it may also have a theological school or a department in which religion is taught. This interpretation of the bill, if it be the legislative intent, could be clarified to preclude an adverse construction by higher authority. See Higher Education Facilities Act of 1963, 20 U. S. C. § 751 (a) (2) (1964).

As is often our situation when we are faced with issues in the domain of the Supreme Court of the United States, we must make answer with a considerable degree of uncertainty. See *Dirring, petitioner,* 344 Mass. 522, 523; *Opinion of the Justices,* 349 Mass. 786, 791–793; *Pedlosky* v. *Massachusetts Inst. of Technology,* 352 Mass. 127, 129; *Opinion of the Justices,* 353 Mass. 790, 793. Here the two

material cases were not unanimous. In *Everson* v. *Board of Educ. Township of Ewing, N. J.* 330 U. S. 1, which upheld the expenditure of public funds to defray the cost of transportation of children to and from private schools not operated for profit without regard to religious belief, the court divided five to four and there are three opinions, two of them dissenting, covering seventy-four pages. In *School Dist. of Abington Township, Pa.* v. *Schempp,* 374 U. S. 203, which forbade Bible reading in the public schools, there are five opinions, three of them concurring and one dissenting, covering 118 pages.

To question 6 (a), we answer, "No."

6 (b). If the bill is interpreted to authorize a participating organization to embrace one maintained for the training of ministers, rabbis, priests, or other members of religious orders, we also answer with a considerable degree of uncertainty.

To question 6 (b), we answer, "Yes."

<div align="right">

RAYMOND S. WILKINS.
JOHN V. SPALDING.
ARTHUR E. WHITTEMORE.
R. AMMI CUTTER.
PAUL G. KIRK.
JACOB J. SPIEGEL.
PAUL C. REARDON.