# Vermont Educational Buildings Financing Agency v. Daulton Mann

[ 247 A.2d 68 ]

June Term, 1968

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 1, 1968

*Underwood, Lynch & Ketcham* for the Plaintiff.

*Downs & Rachlin* for the Defendant.

*Joseph E. Frank, Esq.,* amicus curiae in behalf of the American Civil Liberties Union of Vermont.

**Holden, C.J.** This appeal by the defendant, from a declaratory decree in chancery, challenges the validity of the Educational Building Financing Act of 1966 (S) No. 56; 16 V.S.A. §§3851-3862. The Court is called upon to review three questions which engage provisions of both State and Federal Constitutions.

1. Does the enactment serve a public, as distinguished from a private purpose?

2. Does the act constitute an unlawful delegation of power to a subordinate agency of the State?

3. Does the assistance contemplated by the statute, when extended to a church related college, offend the First Amendment, as applied to the states by way of Amendment 14?

The controversy arose when the plaintiff, the Vermont Educational Buildings Financing Agency, undertook certain leasing agreements with Bennington College Corporation and the College of St. Joseph the Provider, Inc., in accordance with the provisions of the statute The defendant, the chairman of the Agency, on advice of counsel, refused to execute the leases and issue the revenue bonds, contemplated by the statute, on the grounds that the debentures were unmarketable because of constitutional infirmities in the enactment. The Agency petitioned, under the Declaratory Judgment Act, for relief against the chairman to settle these questions. The attorney general has been joined and heard in the proceedings, as provided in 12 V.S.A. §4721.

In 1966 the General Assembly established the Vermont Educational Buildings Financing Agency, as a corporate instrumentality of the State, for the purpose of aiding the construction and financing of any educational facilities of eligible institutions. 1966, No. 56 (Sp.Sess) §1, see note 16 V.S.A. §3851. According to the definition of the statute, institution means any private nonprofit university, college or secondary school in the state, the University of Vermont and the Vermont state colleges. 16 V.S.A. §3851(c).

The enactment empowered the agency to issue negotiable revenue bonds, but expressly provides that such obligations of the agency shall not be a debt of the State of Vermont, nor shall the state be liable thereon, nor shall they be payable out of any funds, other than those of the agency. 16 V.S.A. §§3856-3857. The act further provides that the bonds of the agency and the income they produce shall, at all times, be exempt from taxation, except for transfer and estate tax assessments. 16 V.S.A. §3859.

By the terms of this statute, the Agency is authorized to construct and finance educational facilities for lease to eligible institutions. It may fix and collect rentals and contract with its landholders to fix rentals and other charges for the use of facilities at rates sufficient to pay all costs and the interest on amortization of and reserve for the bonded indebtedness. 16. V.S.A. §3853. Any lease of a facility becomes the general obligation of the lessee and the lease may provide, as a part of the contract with the holders of the bonds for the pledging of

revenues, the rental charges, the establishment of reserves and the disposition if the facility at the end of the term. 16 V.S.A. §3854.

The chancellor's findings establish that Bennington College was founded in 1925 for the higher education of women, with the power to confer academic degrees. It is a nonprofit institution, administered by a board of trustees. The administration, management and control of the College is in no way connected with any religious group or organization. It has no religious facility on its campus and the college does not encourage nor discourage religious activities on the part of its student body in any way whatsoever. The resolution of the Agency has authorized the execution of a lease and sublease with Bennington College to aid in the construction and financing of a science building project, to be located on the college campus.

For the same purpose, the Agency and the College of St. Joseph the Provider, Inc., entered into leasing and subleasing agreements to construct and finance a classroom and science building for the education of students at that institution. The college is located in Rutland. It was founded as a nonprofit corporation and authorized in 1964 to confer degrees. Its constitution states—"The College of St. Joseph the Provider exists for the purpose of educating young women so that they may become well-trained professional women of true and deep Christian culture."

The chancellor determined that both colleges are eligible institutions within the definition of the term prescribed in 16 V.S.A. §3851(c). Bennington and St. Joseph share, in common, the concern of this appeal, with the first two questions relating to the nature of the power delegated to the Agency and whether the act permits the expenditure of public funds for private purposes contrary to the Vermont Constitution.

■ The purpose of the enabling act of 1966 is declared in its preamble:

> The purpose of this act is to promote the welfare of the people of the State of Vermont; create the Vermont Educational Buildings Financing Agency as a body corporate and politic with power to acquire, construct, reconstruct, improve, equip, furnish and operate facilities, to lease them and to fix fees, rentals and charges for the use thereof; authorize and regulate the issuance of bonds of the agency, and provide for their payment and the rights of the

holders thereof; authorize the Agency to enter into agreements with the government of the United States or any federal agency; empower the agency to sell, convey and mortgage property; and provide that no debt of the State of Vermont may be incurred in the exercise of any of the powers granted by this act. 1966 (S.) No. 56 §1.

That this is a public purpose is settled in the language of our Constitution itself. The Plan or Frame of Government of the Vermont Constitution establishes the policy and defines its objectives.

*Laws for the encouragement of virtue and prevention of vice and immorality ought to be constantly kept in force, and duly executed; and a competent number of schools ought to be maintained in each town unless the General Assembly permits other provisions for the convenient instruction of youth. All religious societies, or bodies of men that may be united or incorporated for the advancement of religion and learning, or for other pious and charitable purposes, shall be encouraged and protected in the enjoyment of the privileges, immunities, and estates, which they in justice ought to enjoy, under such regulations as the General Assembly of this State shall direct.* Constitution of the State of Vermont, 1777, Chapter II, XLI; Vermont Constitution 1786. Ch. II §38; Constitution 1793, Ch. II §64; as amended 1964.

This provision of our Constitution imposes on the General Assembly a duty in regard to education that is universally accepted as a proper public purpose. *Everson* v. *Board of Education,* 330 U.S. 1, 7, 9, 67 S.Ct. 504, 91 L.Ed. 711 at 719; *Cochran* v. *Louisiana State Board of Education,* 281 U.S. 370, 374, 50 S.Ct. 335, 74 L.Ed. 913.

■■ If the general public benefit is the dominant interest served, constitutional demands are not offended, even though the aid enures to the benefit of a private institution. As Chief Justice Hughes has explained—the interest of the state "* * * is education, broadly; its method, comprehensive. Individual interests are aided only as the common interest is safeguarded." *Cochran* v. *Louisiana State Board of Education, supra,* 281 U.S. at 375, 50 S.Ct. at 336. To the extent that Bennington and St. Joseph Colleges are aided in financing a public state educational program, there is no offense to Articles 7th and 9th of Chapter I of the Vermont Constitution. *City of Burlington* v. *Central*

*Vermont Railway Co.,* 82 Vt. 5, 9, 71 A. 826; *Town of Bennington* v. *Park,* 50 Vt. 178, 192; See also *Dresden School District* v. *Norwich Town School District,* 124 Vt. 227, 231, 203 A.2d 598.

Was the authority granted to the Agency sufficiently restrained to constitute a permissible delegation of power within the related requirements of the Vermont Constitution?

Chapter II, Section 2. *The Supreme Legislative power shall be exercised by a Senate and a House of Representatives.*

Chapter II, Section 5. *The Legislative, Executive, and Judiciary departments, shall be separate and distinct, so that neither exercise the powers properly belonging to the others.*

██ Our review of this question must proceed according to "(t)he established rule * * * that every presumption is to be made in favor of the constitutionality of an act of the Legislature and it will not be declared unconstitutional without clear and irrefragable proof that it infringes the paramount law." *State* v. *Auclair,* 110 Vt. 147, 156, 4 A.2d 107 (Moulton, C.J.).

██ Functions of the General Assembly which are strictly and entirely legislative cannot be delegated, but are reserved unto the Legislature alone. *Village of Waterbury* v. *Melendy,* 109 Vt. 441, 448, 199 A. 236. But the traditional doctrine of separation of powers recognizes that the lawmakers cannot deal directly with all functions of the sovereign. Neither can those functions be precisely divided. *Sabre* v. *Rutland Railroad Co.,* 86 Vt. 347, 362, 85 A. 693; *Vermont Electric Power Co.* v. *Anderson,* 121 Vt. 72, 84, 147 A.2d 875.

█ The General Assembly cannot transfer its supreme legislative power to enact laws. *Village of Waterbury* v. *Melendy, supra,* 109 Vt. at 451, 199 A. 236. But it can confer upon the executive and judicial branches of government or grant to a subordinate agency, of its own creation, a wide discretion in the manner and method for the execution of statutes validly adopted. *Dresden School District* v. *Norwich Town School District, supra,* 124 Vt. at 230, 203 A.2d 598; *Elliott* v. *Vermont State Fish and Game Commission,* 117 Vt. 61, 69, 84 A.2d 588; *State Highway Board* v. *Gates,* 110 Vt. 67, 69, 1 A.2d 825.

The Educational Building Financing Act does not attempt to transfer law making power to the Agency. The basic design of these

provisions is administrative to enable the Agency to properly perform the management function entrusted to its charge. It is entirely proper and essential that a corporate instrumentality of the state be endowed with incidental authority to adopt bylaws and establish uniform rules and regulations to carry out the purpose of the statute and insure adequate financial management, with equitable distribution of its services to the public at large, through the education institutions specified in the act.

The administration of the act involves no power to appropriate public funds. Nor did the Legislature attempt to transfer the power to levy assessments and apportion expense among various subordinate taxing units of the State, as in *Village of Waterbury* v. *Melendy, supra,* 109 Vt. at 453, 199 A. 236.

The authority conferred on the Agency is the power to enter contracts to achieve a valid public objective. Such grants of authority to administrative agencies of the State are neither new nor untried. Notable precedents are found in the St. Lawrence and Niagara Power Projects, constituting the public service board as a power authority. 30 V.S.A. §§211 and 211a. See *In re Petition of Vermont Electric Power Co.,* 125 Vt. 395, 216 A.2d 918; *Vermont Electric Power Co.* v. *Anderson, supra,* 121 Vt. 72, 147 A.2d 875.

Authorization to negotiate and execute contracts of this nature, of necessity, involves a wide discretion on the part of the Agency. The powers of the Agency are spelled out with considerable detail. Its authority is confined within ascertainable and reasonable boundaries, leaving the administration of the act to the board of seven members. 16 V.S.A. §§3852-3856. In addition, the Agency is required annually to completely report to the executive and legislative branches, all projects applied for and planned, and all of its undertaking, in progress and completed, together with a financial audit. 16 V.S.A. §3862.

■ These requirements furnish sufficient and adequate standards to guide and direct the action of the board within the dimensions of constitutional requirements. Our conclusion in these aspects of the appeal is consistent with decisions reached by the Supreme Judicial Court of Massachusetts and the Supreme Court of New Hampshire in their consideration of similar statutes. Opinion of the Justices (Mass. 1968), 236 N.E.2d 523; *In re Opinion of the Justices* (1955) 99 N.H. 536, 114 A.2d 801, 803. See also, Constitutional Restrictions

on the Use of Public Authorities in New England, 43 B.U.L.Rev., 123, (1963).

The proposed assistance for building classroom and science facilities at the College of St. Joseph the Provider presents, in a new context, the additional question of Church and State relationship. The Declaration of Rights in the Vermont Constitution guarantees freedom of worship and is designed to afford true religious liberty to all inhabitants of the State. Chapter I, Article 3rd, Vt.Con. But there is no explicit injunction precluding assistance to sectarian education. And societies for this advancement of religion and learning shall be encouraged and protected. Chapter II §64, Vt.Con., *supra;* See Yale L.J. 920. In this area, the limits of the First Amendment of the Federal Constitution are more restrictive. *Swart* v. *South Burlington Town School District,* 122 Vt. 177, 184, 167 A.2d 514, 81 A.L.R.2d 1300, cert. den. 366 U.S. 925, 81 S.Ct. 1349, 6 L.Ed.2d 384.

The findings make it clear that the College of St. Joseph is a church related institution of learning. The affairs of the college are directed by the trustees. At the present time twelve members are of the Roman Catholic faith, one is of Jewish belief and two are Protestants. The articles of association of the college require that the Mother Superior and the four other members of the Council of the Sisters of St. Joseph Society, shall be *ex officio* members of the board. The other trustees are appointed by the Mother Superior with the advice and consent of the Council. Of the appointive trustees, two are required to be Sisters of the St. Joseph Society, one an ordained priest of the Roman Catholic Church and the remaining three are lay persons.

There is no religious requirement in the selection and qualification of administrative officers, faculty and students. However, in each of these segments of the College, those of Roman Catholic faith predominate.

The chancellor's findings establish that the trustees of the college are completely independent of the Diocese of Burlington and the Church has no control of the board. The college is financed from tuition and gifts and receives no financial assistance from the Church. And the Roman Catholic Church has no proprietary interest in the reversion, or otherwise, in the college property. This relationship between the college to the Church is one of affinity, rather than direct dominion.

This is in contrast with *Swart* v. *South Burlington School District, supra,* 122 Vt. at 181, 167 A.2d 514, where the school receiving tuition from the local government was controlled and supported by the church.

██ Since the decision in the *Swart* case the Supreme Court of the United States has fashioned a test for distinguishing forbidden involvements of government with religion and those contacts which are permissible within the First Amendment.

> "The test may be stated as follows: What are the purpose and the primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution. That is to say that to withstand the strictures of the Establishment Clause there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion." *Abington School District* v. *Schempp,* 374 U.S. 203, 222, 83 S.Ct. 1560, 1571, 10 L.Ed.2d 844 (1963).

Acknowledging the test is not easy to apply, the Supreme Court reaffirmed these standards in upholding the constitutionality of the New York statute requiring the loan of text books to all students, including those attending parochial schools. *Board of Education, etc.* v. *Allen* (June 10, 1968) 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060.

██ It has often been observed that the barrier between government and religion is not easy to locate. The problem is one of degree, with neutrality the principal guide and the final command. *Abington School District* v. *Schempp, supra,* 374 U.S. at 226, 83 S.Ct. 1560; *Everson* v. *Board of Education, supra,* 330 U.S. at 14 and 16, 67 S.Ct. 504, 91 L.Ed. 711. The search for the answer must be carefully undertaken to the end that the plaintiff, as an agency of the State, is not inadvertently forbidden from extending the assistance of the statute to the present and prospective student body of St. Joseph because of the religious association of its founders. *Swart* v. *South Burlington Town School District, supra,* 122 Vt. at 184, 167 A.2d 514. Such a result would trench upon the public purpose of the act, since the students and the State are the true beneficiaries of the act. *Cochran* v. *Louisiana State Board of Education, supra,* 281 U.S. at 375, 50 S.Ct. 335, 74 L.Ed. 913. And—"(t)he mere fact that public funds are

expended to an institution operated by a religious enterprise does not establish the fact that the proceeds are used to support the religion professed by the recipient." *Swart* case, *supra*, citing *Bradfield* v. *Roberts*, 175 U.S. 291, 298, 20 S.Ct. 121, 44 L.Ed. 168; *Cochran* v. *Louisiana State Board of Education*, 281 U.S. 370, 50 S.Ct. 335, 74 L.Ed. 913, 915; *Everson* v. *Board of Education, supra*, 330 U.S. at 18, 67 S.Ct. 504.

It is important that engaging in the program for construction of education facilities under the act is entirely voluntary on all sides. We detect no element of preferential or coercive treatment as to eligible institutions or as to those who may finance the project. And there is no issue of compulsory contribution by way of tax resources. 16 V.S.A. §3857.

■ The courts are directed to the presumption that the Legislature intended to accomplish the objective of the act within the limits established by the Constitution. *Vermont Woolen Corp.* v. *Wackerman*, 122 Vt. 219, 223, 167 A.2d 533; *Reed* v. *Allen*, 121 Vt. 202, 206, 153 A.2d 74, 73 A.L.R.2d 1161. "The presumption of constitutionality must prevail in the absence of some factual foundation of record for overthrowing the statute." *Central Vermont Railway, Inc.* v. *Campbell*, 108 Vt. 510, 523, 192 A. 197, 203, 111 A.L.R. 175.

■ The record presented in this appeal, including the findings of the chancellor and the Bennington and St. Joseph's resolutions adopted by the plaintiff, reveal no primary effect that either advances or inhibits religion through the function of the Agency. In the assistance offered by the plaintiff, both colleges stand on equal footing with equivalent purposes to be served. There is no suggestion that the cause of religion will be served or obstructed by the facilities to be constructed and financed at either institution. The assumption is to the contrary. *Board of Education, etc.* v. *Allen, supra*, 392 U.S. at 244, 88 S.Ct. at 1927; *Opinion of the Justices, supra*, 236 N.E.2d at 528.

Accordingly, we hold the declaratory decree of the chancellor, sustaining the leasing agreements between the Vermont Educational Buildings Financing Agency with the Bennington College Corporation and the College of St. Joseph the Provider, Inc., is sound in law.

*Decree affirmed.*

**Smith, J.** (dissenting) : My dissent to the opinion of the Court is directed only to that part of the decision which holds that the act of the Vermont Educational Buildings Financing Corporation in approving the construction of a new building for the College of St. Joseph the Provider, Inc. was not in violation of the First and Fourteenth Amendments of the United States Constitution.

The fact that the agency of the state furnishes aid in the form of low cost credit, rather than in direct appropriations of money to the institutions that it finances, is of little consequence. There can be no doubt that the agency is authorized to use the power and prestige of the state to aid the educational institutions with which it contracts, which is sufficient to raise the question, if the aid here furnished to St. Joseph comes under the bar of the First Amendment as applied to the states by the Fourteenth Amendment. *Horace Mann League of U.S., etc.* v. *Board of Public Works,* 242 Md. 645, 220 A.2d 51, 65.

No dispute exists here but that the College of St. Joseph is a church related school of learning. The trustees, who are appointed by the Mother Superior of the Sisters of St. Joseph, consist of twelve members of the Roman Catholic faith, with two Protestant and one Jewish member. All of the administrative officers are of the Catholic faith. The faculty has twenty members of the Catholic faith, sixteen of whom are Roman Catholic nuns and two Protestant members. Out of a total student enrollment of one hundred and two all but three of the regular students are of the Roman Catholic faith.

But, as the majority has rightfully stated, the mere fact that public aid is furnished to an institution operated by a religious enterprise does not establish that such aid is used to support the religion professed by such operators. While the factual circumstances of St. Joseph's operation above outlined could be of significance in determining whether this educational institution is religious or sectarian, of pre-eminent importance is the stated purposes of the college. *Horace Mann League of U.S., etc.* v. *Board of Public Works, supra,* p. 65.

The purpose of the college is stated in Article 11 of its Constitution, "The College of St. Joseph the Provider exists for the purpose of educating young women so that they may become well trained, professional women of true and deep Christian culture." Here, the stated purpose of the College indicates clearly that it seeks to promote one religious culture, the Christian, in its students. Whether that "true"

Christian culture in which students are to be educated would be that held to be true by the particular beliefs of the members of the religious society controlling the college is immaterial. It is the stated purpose to teach the culture of one general religious belief, as opposed to the teaching of other religious cultures, or even that of non-believers, that makes the college sectarian. The fact that the stated purpose of the college is to blend secular and sectarian education does not serve to lift the bar of the First Amendment against the aid attempted to be granted by the agency of the state. *Zorach* v. *Clauson,* 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954.

The proposed aid to be furnished to St. Joseph by the Vermont Educational Building Financing Corporation, created by legislative enactment, would inevitably result in the advancement of the particular religious culture which is its stated educational purpose. The aid provided to educational institutions under the legislative enactment, when extended to St. Joseph's exceeds the scope of legislative power as circumscribed by the Constitution. *Abington School District* v. *Schempp,* 374, U.S. 203, 222, 83 S.Ct. 1560, 10 L.Ed.2d 844.

I am unable to agree with the majority that the recent Supreme Court decision in *Board of Education, etc.* v. *Allen,* 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 supports the results attained in the opinion. The question presented in *Allen* was the constitutionality of a New York statute allowing the State of New York to supply text books to students in both public and parochial schools. Mr. Justice White, delivering the opinion of the Court stated: "The law merely makes available to all children the benefits of a general program to lend school books free of charge. Books are furnished at the request of the pupil, and ownership remains, at least technically in the State. Thus no funds or books are furnished to parochial schools, and the financial benefit is to parents and children, not to schools."

In *Allen* as in the much earlier *Cochran* v. *Louisiana State Board of Education,* 281 U.S. 370, 50 S.Ct. 335, 74 L.Ed. 913, the Supreme Court has sustained the constitutionality of legislative acts as "neither advancing or inhibiting religion" where the aid furnished is beneficial to parents and children, and not to the school.

But the action of the State Agency now under consideration before us results in a direct benefit to the sectarian school, in the acquisition of a new building, and not to the students at St. Joseph, or their

parents. I can find no authority in *Allen* to sustain the constitutionality of this act.

I would hold that the action of the agency in approving the construction of facilities for St. Joseph violated the First and Fourteenth Amendments of the Constitution of the United States.